EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>    Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), Alguaciles (as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación | 2015 TSPR 21<br><br>192 DPR ____ |

Número del Caso: ER-2015-1

Fecha: 9 de marzo de 2015

Materia: Resolución del Tribunal con Votos

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Aprobación de los Derechos
Arancelarios pagaderos a
los(as) Secretarios(as),
Alguaciles(as) y a otro                   ER-2015-1
personal de la Rama Judicial
que ejerce funciones de
recaudación

RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de marzo de 2015.

De conformidad con la facultad que nos confiere la Ley Núm. 47 de 30 de julio de 2009, según enmendada, para disponer los derechos correspondientes a la tramitación de acciones civiles en el Tribunal General de Justicia y otros servicios que se prestan en la Rama Judicial, y luego de evaluar las recomendaciones del Informe rendido por el Comité Técnico creado por la Ley Núm. 47-2009, *supra*, se adoptan los siguientes derechos arancelarios:

I. <u>DERECHOS DE PRESENTACIÓN QUE DEBERÁN PAGARSE A LOS(AS) SECRETARIOS(AS) EN CASOS DE NATURALEZA CIVIL Y A OTROS(AS) FUNCIONARIOS(AS) DE LA RAMA JUDICIAL CON FUNCIONES DE RECAUDACIÓN</u>.

A. Por cada demanda en pleito civil contencioso ante el Tribunal de Primera Instancia, excepto en demandas en que se reclamen exclusivamente alimentos, las que estarán exentas del pago de derechos… Sala Superior – $90.00; Sala Municipal – $60.00. La excepción del pago de derechos en reclamaciones de alimentos a favor de

menores aplicará sólo a la parte que ejerza la custodia del(de la) menor o de los(as) menores. Igualmente, estará exenta del pago de derechos la parte que solicite alimentos entre parientes o en calidad de ex-cónyuge. En aquellos casos en que ambas partes comparezcan conjuntamente mediante estipulación, la parte a quien se reclamen alimentos vendrá obligada a pagar el arancel dispuesto en este apartado.

B. Por la primera alegación de la parte demandada en pleito civil contencioso, sea contestación o moción en el Tribunal de Primera Instancia, con excepción del recurso de expropiación forzosa, que estará libre del pago de derechos…………………………. Sala Superior - $90.00; Sala Municipal - $60.00.

C. Por cada petición de divorcio por consentimiento mutuo en el Tribunal de Primera Instancia…………………………………………………………. $78.00.

D. Por cada petición de Declaratoria de Herederos en el Tribunal de Primera Instancia………………………………………………………. $78.00.

E. Por cada petición en recursos extraordinarios, con excepción del recurso de *hábeas corpus*, el cual se tramitará libre del pago de derechos………………………………………………. $90.00.

F. Por cada oposición de una parte cualquiera en recursos extraordinarios, con excepción del recurso de *hábeas corpus*, el cual se tramitará libre del pago de derechos $90.00.

G. Por cada escrito de promoción de un expediente de jurisdicción voluntaria en el Tribunal de Primera Instancia………………………. $78.00.

H. Por cada solicitud de intervención u oposición en un procedimiento de jurisdicción voluntaria……………………………………………………………… $78.00.

I. Por cada demanda de desahucio por falta de pago, en el Tribunal de Primera Instancia…………………………………………………………………. $60.00.

J. Por cada demanda en reposesión de bienes muebles, en el Tribunal de Primera Instancia………………………………………………………………… $90.00.

K. Por cada recurso de Revisión de Multas Administrativas bajo la Ley de Tránsito…………………………………………………………………….. $6.00.

L. Por cada escrito de apelación civil o de *certiorari* en el Tribunal de Apelaciones……………………………………………………………. $102.00.

M. Por la primera alegación del apelado o recurrido en caso de apelación civil o *certiorari,* en el Tribunal de Apelaciones………………………………………………… $102.00.

N. Por cada escrito de Revisión de Decisiones Administrativas en el Tribunal de Apelaciones………………………………………………………… $102.00.

Ñ. Por cada escrito de apelación o *certiorari* en recursos extraordinarios en el Tribunal de Apelaciones, con excepción del recurso de *hábeas corpus*, el cual se tramitará libre del pago de derechos…………………………. $102.00.

O. Por cada escrito de apelación o *certiorari* o cualquier otro recurso en casos civiles en el Tribunal Supremo, incluido el de Certificación……………………………………………………… $102.00.

P. Por cada escrito de apelación o *certiorari* en recursos extraordinarios ante el Tribunal Supremo, con excepción del recurso de *hábeas corpus*, el cual se tramitará libre del pago de derechos ………………………………………………………… $120.00.

Q. Transcripciones……………………………………. $6.00 por página.

R.   Regrabaciones………………………………………… $12.00 por hora o fracción de hora de grabación, hasta un máximo de $24.00.

S.   Copias de documentos un cargo básico de $6.00 por la primera página y por la búsqueda y manejo del expediente judicial y $0.60 por cada página adicional.

T.   Por la celebración de Bodas…. $20.00.

U.   Por la juramentación en las secretarías del diligenciamiento de cada emplazamiento $5.00.

V.   Traducciones
1. Por la labor de traducción de documentos por el Negociado de Traducciones, $25.00 por la primera página y $5.00 por cada página adicional.

2. Por la certificación de traducciones de cualquier documento hechas por el Negociado                          de Traducciones…………………………………………….. $5.00.

II.   DERECHOS QUE DEBERÁN PAGARSE A LOS(AS) ALGUACILES.

A.   Por cada diligencia de un emplazamiento…………………………………………………… $30.00.

B.   Por notificar, diligenciar o ejecutar un embargo, orden, mandamiento o requerimiento judicial, excepto orden de arresto…………… $30.00.

C.   Por cumplimentar un mandamiento de posesión o restitución de una propiedad, desahuciando a quien la ocupe, o por diligenciar una orden de lanzamiento en casos                               de desahucio……………………………………………………. $24.00.

D.   Por recibir y pagar dinero en cumplimiento de orden de ejecución u otra providencia, cuando se han embargado o vendido bienes muebles o inmuebles, por los primeros dos mil trescientos ochenta y siete dólares ($2,387.00), tres por ciento (3%);

por toda suma en exceso de dos mil trescientos ochenta y siete dólares ($2,387.00) dos por ciento (2%). En ningún caso de venta de propiedad mueble o inmueble el arancel aquí dispuesto excederá de novecientos cincuenta y cinco dólares ($955.00) Cuando el producto de dicha venta es abonado en cuenta y no se efectúa transferencia alguna de dinero, se cobrará la mitad del arancel correspondiente.

E. Por recibir y pagar dinero en cumplimiento de orden de ejecución y sin orden de embargo o en los casos en que los bienes muebles o inmuebles embargados no son vendidos, sobre los primeros dos mil trescientos ochenta y siete dólares ($2,387.00), dos y medio por ciento (2.5%) y uno por ciento (1%) sobre toda suma en exceso de dos mil trescientos ochenta y siete dólares ($2,387.00), sin que en ningún caso el arancel pueda exceder de cuatrocientos setenta y ocho dólares ($478.00). Los derechos que aquí se autorizan, así como las costas de anuncios de ventas y otros gastos razonables incurridos en la ejecución de una sentencia, deberán cobrarse a la persona contra quien se ha dictado el fallo o en la forma en que la orden de ejecución lo indique.

F. Por firmar y otorgar una escritura, inclusive la certificación o reconocimiento, cuyo pago deberá hacer el(la) donatario(a) antes de la entrega……………………………………………………………………………. $30.00.

G. Por redactar o certificar un Acta de Venta Judicial…………………………………………………………… $12.00.

H. Por gastos de viaje incurridos en el diligenciamiento de cualquier notificación, citación, orden u otra gestión dispuesta por el tribunal, que surja del trámite de acciones civiles hasta……………………………………………………………………. $3.00 por milla.

Los derechos arancelarios que deben pagar los ciudadanos y las ciudadanas por otros trámites misceláneos que están en vigor conservarán su vigencia hasta tanto este Tribunal apruebe cualquier modificación a los mismos.

Se ordena a la Secretaria del Tribunal que, conforme a lo dispuesto en el Artículo 3 de la Ley Núm. 47 de 30 de julio de 2009, según enmendada, remita esta Resolución a las Secretarías de los Cuerpos Legislativos para el trámite correspondiente.

Publíquese.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Presidenta señora Fiol Matta, la Juez Asociada señora Rodríguez Rodríguez y la Jueza Asociada Oronoz Rodríguez emitieron un voto particular de conformidad. Al voto particular de conformidad de la Jueza Presidenta señora Fiol Matta se unieron el Juez Asociado señor Feliberti Cintrón y la Jueza Asociada Oronoz Rodríguez. Al voto particular de conformidad de la Jueza Asociada Oronoz Rodríguez se une el Juez Asociado señor Feliberti Cintrón. La Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo, señor Rivera García y señor Estrella Martínez emitieron votos particulares disidentes. Al voto particular disidente de la Jueza Asociada señora Pabón Charneco se unieron los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García. Al voto particular disidente del Juez Asociado señor Kolthoff Caraballo se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Rivera García y señor Estrella Martínez. Al voto particular disidente del Juez Asociado señor Rivera García se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo y señor Estrella Martínez. Al voto particular disidente del Juez Asociado señor Estrella Martínez se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señor Kolthoff Caraballo y señor Rivera García.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Aprobación de los Derechos
Arancelarios pagaderos a
los(as) Secretarios(as),                    ER-2015-1
Alguaciles(as) y a otro
personal de la Rama Judicial
que ejerce funciones de
recaudación

Voto Particular de Conformidad emitido por la Jueza Presidenta SEÑORA FIOL MATTA al cual se unen el Juez Asociado señor Feliberti Cintrón y la Jueza Asociada ORONOZ RODRÍGUEZ

En San Juan, Puerto Rico, a 9 de marzo de 2015.

Estoy conforme con la Resolución que emite el Tribunal en el día de hoy. Por la confianza del Pueblo de Puerto Rico y por el derecho de cada uno de sus individuos a conocer la razón de nuestra acción, aquí explico las circunstancias que nos llevan a tomar esta decisión.

El derecho al acceso a la justicia, junto a la independencia judicial, es fundamento principal de la política pública que guía al sistema judicial puertorriqueño.[1] No es fácil definirlo pero, sin

---

[1] Imperativo estratégico III: Acceso a la justicia para todos y todas, *Plan Estratégico de la Rama Judicial de Puerto Rico 2012-2015*, págs. 33-34.

lugar a dudas, uno de sus objetivos es asegurar que los tribunales estén abiertos, no sólo para aquellos cuyas condiciones económicas se lo faciliten, sino para todos y todas, de manera equitativa.[2] Por ser esencial para nuestro sistema de justicia, el acceso a la justicia cubre todo lo que de alguna manera u otra afecta la oportunidad de las personas, grupos o sectores de nuestra sociedad de vindicar o hacer valer sus derechos. En esa dirección, la visión de la Rama Judicial proclama que "[l]a Rama Judicial será accesible a toda personas, diligente en la adjudicación de los asuntos, sensible a los problemas sociales, innovadora en la prestación de servicios, comprometida con la excelencia administrativa y con su capital humano y acreedora de la confianza del pueblo".[3]

El esquema de pagos de derechos por aranceles es, sin duda, un elemento del derecho al acceso a la justicia, pero me parece un serio error medir ese derecho tan sólo por este factor. La medida que hoy tomamos es necesaria, junto a otras, que también resultan dolorosas, para continuar brindando los servicios judiciales de excelencia que requiere nuestro Pueblo de Puerto Rico. La situación en la que se encuentra la Rama Judicial, por motivo de los recortes presupuestarios, nos obliga a tomar medidas como

---

[2] Véase, E. Rivera Ramos, *Las múltiples caras del acceso a la justicia*, Primer Congreso Acceso a la Justicia-XXII Conferencia Judicial, Hato Rey, Publicaciones Puertorriqueñas, 2005, pág. 8.

[3] http://www.ramajudicial.pr/info-para/Mision-Vision.htm (última visita 4 de marzo de 2015).

esta para estar en condición de poder continuar prestando servicios. Por eso, hoy actuamos no para limitar sino para asegurar el acceso a la justicia.

La decisión que tomamos hoy va dirigida, precisamente, a mantener abiertos nuestros tribunales. Responde, como otras medidas tomadas durante el presente año fiscal, a la situación que enfrentamos a partir de la aprobación el año pasado de la Ley Especial para la Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico.[4] Esta ley suspendió la asignación automática de presupuesto por fórmula que estuvo vigente desde 2002.[5] El presupuesto de la Rama Judicial quedó congelado en la asignación del año fiscal 2013-2014, pero a esta cifra se le aplicó un ajuste adicional de 7.4%.[6] El efecto neto de estas medidas fue que la Rama Judicial recibió 53.9 millones de dólares menos de lo que correspondía para el año fiscal 2014-2015 y 25.8 millones menos de lo que había recibido en el año fiscal 2013-2014.[7]

Ante esta realidad y anticipando la insuficiencia presupuestaria, el 7 de julio de 2014 suscribí la Orden Administrativa número 6 ordenándole a la Oficina de

---

[4] Ley Núm. 66-2014, Ley Especial para la Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico.

[5] Ley Núm. 286-2002, 23 LPRA sec. 104.

[6] Ajuste que no se aplicó a los Municipio ni a la Universidad de Puerto Rico.

[7] La asignación presupuestaria final de la Rama Judicial fue establecida en la Resolución Conjunta 46-2014 de 1 de julio de 2014.

Administración de Tribunales diseñar e implantar medidas concretas de control de gastos en renglones especificados en la Orden. Aclaré y recalqué que todas estas medidas tenían que considerar el acceso a la justicia, así como la modernización, la prestación de servicios de excelencia para la ciudadanía, la máxima protección a los empleos y los derechos de nuestros servidores y en ese contexto tratar de terminar el año fiscal sin déficit presupuestario.[8] Sin embargo, la magnitud y el impacto de la reducción en nuestro presupuesto ha requerido aún más. Tan es así que, el Pleno de este Tribunal se reunió en sesión extraordinaria en dos ocasiones para discutir las alternativas y las medidas propuestas.

Por otra parte, desde que en 1915 se estableció el sistema de cobro de derechos arancelarios para presentar acciones en nuestros tribunales, se ha eximido del pago de aranceles a las personas que no pueden sufragar el costo de los mismos.[9] Los reglamentos de administración de tribunales

---

[8] Cabe destacar que desde la Oficina de Administración de los Tribunales se han fomentado varias medidas de prudencia en el uso de recursos para maximizar la eficiencia y el rendimiento. Véase Voto Particular de Conformidad de la Jueza Presidenta Fiol Matta en la Resolución de 9 de marzo de 2015, *In re: Para enmendar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado*. Véanse, además, Circular OAT 147 de 26 de febrero de 2014; Memorando 182 de 1 de mayo de 2014 sobre Materiales Excluidos de Inventario; Memorando 195 de 10 de junio de 2014 sobre Control de Gastos de Manejo de Correspondencia.

[9] Ley Núm. 17 de 11 de marzo de 1915, 32 LPRA sec. 1476.

que este Tribunal ha aprobado, así como medidas legislativas, como la Ley Núm. 47-2009,[10] han reconocido estos mecanismos. La Resolución que se aprueba hoy no cambia en nada ese derecho.[11] Por el contrario, mantiene en vigor las exenciones del pago de aranceles para los litigantes indigentes e incluso se mantienen las exenciones al pago de derechos arancelarios aprobados en materias como alimentos, hábeas corpus y expropiaciones forzosas.

Durante muchos años los recursos generados por los derechos arancelarios entraban al Fondo General del Tesoro Estatal. Desde 1998 entran al Fondo Especial de Aranceles de la Rama Judicial.[12] Al transferir dichos recaudos al Fondo Especial la ley de 1998 también aumentó en 50% los aranceles

---

[10] Esta ley enmendó la Sección 6 de la Ley Núm. 17 de 11 de marzo de 1915, para proveer un procedimiento para eximir a quienes no puedan pagar los derechos establecidos por el Tribunal Supremo o los derechos de suspensión requeridos por Ley. Requiere, claro está, demostrar la incapacidad económica para satisfacer los derechos requeridos por ley e incluye la posibilidad de exención de pagos por acciones a nivel apelativo. 32 LPRA sec. 1482.

[11] Véase, Reglas para la Administración del Tribunal de Primera Instancia, 4 LPRA Ap. II-B, R. 18; Reglamento del Tribunal de Apelaciones, 4 LPRA XXII-B, R. 78. En el Tribunal Supremo se requiere llenar un formulario sencillo mediante el cual se puede solicitar litigar como indigente. http://www.ramajudicial.pr/PROSE/OAT%201481%20DECLARACIÓN%20 EN%20APOYO%20DE%20SOLICITUD%20%20LITIGAR%20%20INDIGENTE%20(P AUPERIS).pdf (última visita 4 de marzo de 2015).

[12] Ley Núm. 235-1998, 32 LPRA sec. 1476 *et seq*.

que se pagaban hasta entonces en los asuntos sometidos ante el Tribunal de Primera Instancia y estableció los derechos correspondientes a los tribunales apelativos.

El 30 de julio de 2009 se aprobó la Ley Núm. 47-2009. Entre otras cosas, esta ley creó el sistema de pago único para la presentación de una acción civil. Hasta ese entonces cada escrito que se presentaba ante el Tribunal dentro de una misma acción civil pagaba un cargo por separado mientras que al presente se hace un solo pago con el primer documento presentado. La Ley Núm. 47-2009 también dio facultad al Tribunal Supremo para establecer los derechos que debían pagarse y determinar las cuantías que deben cobrarse por los servicios que ofrece la Rama Judicial.[13] La Ley dispone que al hacer ajustes a la estructura arancelaria el Tribunal debe considerar el costo de vida según el Índice de Precios del Consumidor, los gastos operacionales de la Rama Judicial y sus proyecciones, y los costos de servicios similares en la empresa privada.[14] Antes de cualquier ajuste debe nombrarse un Comité Técnico para estudiar y someter recomendaciones al Tribunal. La estructura arancelaria actual data del 2010 cuando el Tribunal Supremo adoptó, con algunas modificaciones, las recomendaciones del primer Comité nombrado a tenor con la Ley Núm. 47-2009.[15] Al emitir la Resolución en esa ocasión, reconocimos que el cargo único

[13] 32 LPRA sec. 1476 n.
[14] *Íd.*
[15] ER-2010-3 de 24 de septiembre de 2010, 180 DPR 232 (2010).

aprobado se encontraba muy por debajo del cargo único cobrado en otras jurisdicciones. Cabe destacar que, al igual que en la presente ocasión, el principio de acceso a la justicia fue el criterio principal al evaluar el ajuste de los aranceles a una cantidad razonable.[16]

En esta ocasión, al amparo de la Orden Administrativa número 6 se convocó nuevamente al Comité Técnico dispuesto por la Ley Núm. 47-2009, para que sometiera al Pleno de este Tribunal sus recomendaciones respecto a la estructura arancelaria en vigor desde 2010. En las reuniones extraordinarias celebradas el 18 y 26 de febrero, el Pleno del Tribunal Supremo discutió el estudio y las recomendaciones. Luego de darle consideración sosegada al informe exhaustivo que preparó el Comité Técnico sobre cada uno de los derechos de aranceles en vigor, y de auscultar alternativas, la mayoría de este Tribunal resolvió aprobar la nueva estructura. Los nuevos aranceles se detallan en el cuerpo de la Resolución.

Al examinar el informe del Comité Técnico cuyas recomendaciones acogimos, confirmamos que el estudio se ciñó a los criterios establecidos en la Ley Núm. 47-2009. El Comité Técnico utilizó el Índice de Precios del Consumidor y analizó los gastos operacionales de la Rama Judicial. Sus recomendaciones se basaron en el crecimiento relativo de

---

[16] *Recomendaciones de Nuevos Aranceles por el Trámite de Acciones Civiles en los Tribunales*, agosto de 2010, Comité Técnico de la Ley Núm. 47-2009, pág. 11.

esas dos variables.[17] El propósito de esta aritmética fue poner al día los aranceles de 2010 para que reflejen el crecimiento natural que hubieran tenido si hubiesen crecido en función de la tasa de inflación o los gastos operacionales de la Rama Judicial.[18] El resultado no es un aumento arbitrario sino la actualización de los derechos ya aprobados en el 2010, ajustados conforme al crecimiento del Índice de Precios del Consumidor o los gastos operacionales de la Rama Judicial.[19]

Para algunos renglones, el Comité Técnico también llevó a cabo una comparación entre lo proyectado y el costo base en el mercado privado por servicios similares.[20] Por ejemplo,

---

[17] Específicamente, se usó la serie histórica del Índice de Precios del Consumidor para los años fiscales 2001 al 2014 para conseguir el valor proyectado de los derechos vigentes desde el 2011. Esta proyección se hizo a base de una regresión lineal con un coeficiente de determinación de 0.9663, que es lo suficientemente alto como para brindar confianza en que la serie de datos se ajusta al modelo lineal. El mismo método se utilizó para los gastos operacionales utilizando como periodo histórico los años fiscales de 1988 al 2014. El coeficiente para este cálculo fue de 0.9798. *Informe Técnico sobre Los Derechos de Aranceles por el Trámite de Acciones Civiles en el Tribunal General de Justicia*, Comité Técnico, pág. 5.

[18] Según las proyecciones, durante el periodo de 2015 al 2017 la tasa de inflación crecerá en un 2.7% y los gastos operacionales de la Rama Judicial crecerán a una tasa de 2.9%. *Íd.*

[19] Esto explica la razón por la cual aquellos renglones cuyo arancel fijado en 2010 era, por ejemplo, de $85.00 cambian a $98.00 o $102.00, dependiendo si se utiliza el crecimiento del Índice de Precios del Consumidor o los gastos operacionales. *Íd.*, pág. 9.

[20] Entre estos se encuentran las bodas a celebrarse en los tribunales; regrabaciones; copias de documentos; transcripciones; traducciones; diligenciamiento de emplazamientos; juramentación del diligenciamiento de emplazamiento en las Secretarías de los tribunales.

el arancel actual de $3.00 por página traducida, a solicitud de partes o por orden judicial, es el que se estableció en 1972 por la ley que creó el Negociado de Traducciones.[21] Al estudiar este renglón, el Comité Técnico descubrió que la Oficina de Administración de los Tribunales ha tenido que contratar profesionales para prestar este servicio, por la magnitud de las solicitudes. Estos traductores cobran $36.15 por cada página traducida. Al momento se ha afectado la disponibilidad de este servicio precisamente porque el arancel cobrado y el costo del servicio no guardan relación.

En cuanto a las copias de documentos, cuyo costo de acuerdo a los aranceles vigentes es de $.50 por página, el Comité Técnico tomó en consideración que copiar un documento judicial requiere mucho más que apretar un botón en una fotocopiadora. La copia del documento judicial ocupa tiempo del personal para procesar la solicitud, tiempo para localizar y trasladar los expedientes, identificar, sacar, copiar y luego reubicar el documento y poner las carpetas o expedientes correspondientes en su lugar. En el Tribunal de Distrito federal de Puerto Rico, para el 2014, el costo de este servicio era de $30.00 por la búsqueda del expediente más $.50 por página.[22] Obviamente, el arancel que hoy aprobamos está muy por debajo de este costo. Finalmente, el arancel para las regrabaciones vigente hasta ahora fue

---

[21] Ley Núm. 87 de 31 de mayo de 1972, 4 LPRA 501 *et. seq.*

[22] http://www.prd.uscourts.gov/?q=court-fees-rates (última visita 6 de marzo de 2015)

aprobado en el 1975. Se cobra $5.00 por cada hora o fracción de hora que tome su preparación.[23] El Comité ajustó este cargo a $12.00 por hora o fracción, hasta un máximo de $24.00.

Los votos disidentes señalan que la captación de fondos atribuible a los derechos arancelarios aprobados representa tan solo un 4.8% de lo que se redujo del presupuesto de la Rama Judicial, mientras que el impacto en la ciudadanía es de un 21.4%.[24] Sin embargo, hay que poner esta comparación en perspectiva. En primer lugar, por supuesto que el beneficio que hemos de obtener por los derechos arancelarios hoy aprobados es poco en comparación con la reducción que sufrió nuestro presupuesto. Nuestro objetivo nunca ha sido y nunca será compensar el déficit presupuestario mediante el pago de tarifas por los trámites judiciales. En segundo lugar, el impacto de las cantidades aprobadas en los ciudadanos está basado en las proyecciones del crecimiento esperado en el Índice de Precios del Consumidor o el gasto operacional de la Rama Judicial. Como indica el informe del Comité Técnico, el crecimiento de la tasa de inflación en los últimos diez

---

[23] Sin embargo, el costo de la cinta magnetofónica con su carrete, que era lo que se usaba entonces, se cobraba adicional.

[24] Voto Particular Disidente del Juez Asociado Estrella Martínez, pág. 5.

años está rezagado en comparación con periodos anteriores.[25] Eso quiere decir que el crecimiento del gasto operacional atribuible a la tasa de inflación en estos años fue menor, en comparación con periodos anteriores; por tanto, como los aranceles propuestos están atados a dicho crecimiento, estos también aumentaron muy poco.

La primera Regla de Procedimiento Civil instruye a nuestros jueces y juezas que deben interpretar todas las demás reglas "de modo que faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica de todo procedimiento".[26] Por otra parte, a los abogados y abogadas de Puerto Rico se les exige reconocer "que existe un imperioso interés social en que todo ciudadano que lo necesite tenga fácil acceso a los servicios legales de abogados".[27] Con ello en mente, aprovecho esta ocasión para hacer un llamado a todos y todas las profesionales del derecho y a toda nuestra judicatura a que se esfuercen en hacer todo lo que esté a su alcance para asegurar el acceso a la justicia de nuestros hermanos y hermanas puertorriqueños, especialmente para los grupos marginados y aquellos sectores más vulnerables de nuestra sociedad. Al hacer este llamado reconozco la aportación que siempre ha

---

[25] *Informe Técnico sobre Los Derechos de Aranceles por el Trámite de Acciones Civiles en el Tribunal General de Justicia*, Comité Técnico, pág. 23.

[26] 32 LPRA Ap. V, R. 1 (énfasis suplido); J.R.T. v. Autoridad de Comunicaciones, 110 DPR 879 (1981).

[27] 4 LPRA Ap. IX n.

hecho nuestra clase togada y que sus ingresos también se han afectado en estos tiempos.

Por nuestra parte, doy fe de que la Rama Judicial está tomando todas las medidas a su alcance para mantenerse en condición de prestar sus servicios al Pueblo y que continuará evaluando nuevas medidas a esos efectos. Los derechos arancelarios aprobados hoy son necesarios frente la realidad fiscal que enfrentamos. Debe quedar claro que todas las consideraciones y acciones que hoy tomamos fueron pensadas en función del derecho al acceso a la justicia. Estas contribuyen, aunque sea tan solo en un 4.8%, como señalan las disidencias, a la estabilidad de la Rama Judicial. De esa estabilidad depende la función judicial y el acceso a la justicia.

Liana Fiol Matta
Jueza Presidenta

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación

Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado

Voto Particular de Conformidad emitido por la Juez Asociada señora Rodríguez Rodríguez al que se une la Jueza Asociada Oronoz Rodríguez

San Juan, Puerto Rico, a 9 de marzo de 2015

No cabe duda de que el País se encuentra sumido en una profunda crisis económica, cuyas consecuencias nos obligan, *a todos*, a repensar a cabalidad los arreglos institucionales prevalecientes. Así, ante problemas fiscales de gran envergadura, que amenazan con trastocar el funcionamiento e integridad de la Rama Judicial en su totalidad, se precisan propuestas concretas, serias, responsables, que velen por el adecuado funcionamiento de los tribunales del País. Es menester, pues, abordar el asunto en su justa complejidad. Es decir, a este Tribunal le compete no sólo velar por el acceso a los foros judiciales –lo cual es esencial-, sino también porque éstos operen de manera adecuada y eficiente, y estén habilitados para llevar a cabo su función primordial en nuestra sociedad democrática: impartir justicia.

Por entender que las medidas adoptadas por una mayoría de este Tribunal, sirven para encaminar soluciones que propenden a solventar los descalabros fiscales que ha sufrido la Rama Judicial y son además el producto de un esfuerzo responsable, ponderado y concienzudo de sus prerrogativas reglamentarias, estoy CONFORME con las Resoluciones que hoy se certifican enmendando el Reglamento de la Administración del Sistema de Personal de la Rama Judicial y estableciendo los derechos arancelarios. Sin embargo, ante las desafortunadas críticas de la disidencia, conviene matizar algunas aseveraciones que se formulan.

Contrario a lo aseverado, la adopción de los derechos arancelarios avalados por una mayoría de este Tribunal, es el resultado de un minucioso estudio de las realidades socioeconómicas del País, el cual, además, ha sido realizado sin perder de vista las consideraciones de política pública que propenden a asegurar la accesibilidad de la ciudadanía a las instancias judiciales y que éstas presten servicios de manera equitativa y sensible. *Véase* Oficina de la Administración de los Tribunales, *Informe técnico sobre los nuevos derechos de aranceles por el trámite de acciones civiles en el Tribunal General de Justicia* (17 de febrero de 2015) (elaborado en virtud de la Ley Núm. 47 de 30 julio de 2009, según enmendada). Intimar lo contrario es faltarle a la verdad. Así, el aumento a los derechos arancelarios no responde al mero capricho de una mayoría de este Tribunal, sino que fue el resultado de un ajuste equitativo en función de la tasa de inflación. *Véase id.* en la pág. 5.

De otra parte, es menester señalar que la aprobación de los derechos arancelarios en cuestión **no trastoca** las exenciones que procuran facilitar el acceso a los tribunales, en atención a determinadas consideraciones de política pública. Por ejemplo, se eximirá del pago de aranceles en pleitos civiles en que se reclamen exclusivamente alimentos, por la primera alegación de la parte demandada en pleitos de expropiación forzosa y por peticiones de *habeas corpus*. Además, se exime del pago de aranceles la celebración de bodas, cuando se trate de personas indigentes. Añádase a lo anterior el derecho estatutario a litigar *in forma pauperis* –que no se verá afectado por el aumento de los derechos arancelarios–, el cual procura que los ciudadanos más desaventajados puedan, efectivamente, vindicar sus derechos en los foros judiciales del País. *Véase* 32 L.P.R.A. sec. 1482; *Gran Vista I v. Gutierrez y otros*, 170 D.P.R. 174, 191 (2007) ("Los estatutos aprobados para permitir la litigación *in forma pauperis* cumplen el propósito de abrir las puertas de los tribunales a todos los ciudadanos, no empece la incapacidad económica de algunos para sufragar los costos asociados a un litigio".). No cabe duda que dicho derecho ha sido plenamente reconocido en las diversas instancias que conforman nuestro sistema judicial.[28] Lo cierto es que

---

[28] *Véase* Reglas para la administración del Tribunal de Primera Instancia del Estado Libre Asociado de Puerto Rico de 1999 (Agosto 2009), R. 18; Reglamento del Tribunal de Apelaciones, R. 78. *Cf.* Reglamento del Tribunal Supremo de Puerto Rico, R. 47. En lo que respecta a la Regla 47 de este Tribunal, conviene señalar que ésta –al disponer para traducciones *in forma pauperis*– bien pudiera mitigar los costos de traducción para las personas con escasos recursos económicos que pretendan revisar sentencias de este foro ante el Tribunal Supremo de Estados Unidos.

la disidencia no propone alternativas reales y concretas para atajar la grave crisis fiscal que sufre la Rama Judicial. E igual de cierto es que no hay soluciones cómodas para problemas complejos. Es hora de tener una cita con la realidad.[29] La disidencia, más que nada, se enfrasca en un soflama populista en el que los expositores dan la impresión de que solo interesan alzarse como redentores y protectores de los "mas débiles", pues no proponen ni una medida concreta para enfrentar los problemas reales que nos aquejan y lograr, de esta forma, aminorar el "perjuicio" que alegan intentan vindicar. *En momentos difíciles, de inusitada complejidad, la retórica no basta.* Se precisan, pues, *personas* dispuestas a tomar *medidas serias*, si bien con suma sensibilidad y de manera equitativa.

No puedo concluir sin expresar mi profundo lamento y completo rechazo a la práctica que se ha entronizado en este Tribunal en tiempos recientes, de filtrar a destiempo información y documentación confidencial de la labor de los jueces y de este Tribunal. Esta es una táctica propia del mundo de la política partidista, donde se utiliza como mecanismo para ejercer presión pública, o para deslegitimar al opositor o granjearse el favor de terceros. Favor que, por la naturaleza de cómo se adquiere, es necesariamente efímero. Así, cabría preguntarse en este caso, a qué responde semejante divulgación. Ello, sin lugar a dudas, atenta contra la dignidad de la función judicial, en la medida en que, como poco, crea la impresión de que se

---

[29] Wolfgang Schäuble, Ministro de Finanzas de la República Federal de Alemania.

pretende influenciar la toma de decisiones de este Tribunal a través de presiones indebidas.  Y es que penosamente, no se tiene conciencia de que "el secreto de las deliberaciones y las votaciones de los jueces es indispensable a cualquier tribunal colegiado", y se es indiferente al efecto perjudicial que tal proceder tiene sobre esta Institución.  R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, vol. 1, 1997, pág. 67.  Es una lástima que esa "poderosa tradición de secreto judicial" que se respetaba rigurosamente en el pasado, se eche a un lado en el afán de ganar *ventajerías* momentáneas.  *Id.*, pág. 69.

Por todo lo anterior, estoy CONFORME con las Resoluciones adoptadas por la mayoría de este Tribunal, las cuales constituyen un primer paso en el arduo proceso de administrar la Rama Judicial conforme a la situación económica que atraviesa el País, sin perder de vista los principios que informan la labor que nos ha sido encomendada.


Anabelle Rodríguez Rodríguez
Juez Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación | ER-2015-1 |
| Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado | ER-2015-2 |

Voto Particular de Conformidad emitido por la Jueza Asociada ORONOZ RODRÍGUEZ, al cual se une el Juez Asociado señor Feliberti Cintrón

En San Juan, Puerto Rico, a 9 de marzo de 2015

La difícil situación económica que aqueja al País y de la cual la Rama Judicial no está exenta, exige que tomemos medidas urgentes para evitar el colapso operacional de nuestro sistema de justicia. Esta coyuntura requiere sopesar diversas alternativas y tomar las decisiones responsables para minimizar el traslado de más tribunales y evitar el despido de empleados. Por ello estoy conforme con la Resolución que antecede.

En el último año, el presupuesto de la Rama Judicial sufrió un recorte significativo. Como consecuencia se han tomado decisiones responsables para reducir gastos y viabilizar la administración de la justicia. Por ejemplo,

se tomaron medidas administrativas para disminuir costos operacionales, se redujeron significativamente los contratos por servicios, se cancelaron y renegociaron contratos de arrendamiento, se concretó la mudanza de la Oficina de Administración de los Tribunales y del Tribunal de Apelaciones, así como el traslado de las operaciones de algunos tribunales a otros.[30] Lo anterior, sin embargo, no es suficiente para contrarrestar el impacto ocasionado por la reducción presupuestaria. Nos corresponde hacer mucho más, actuando valientemente, con sensibilidad y a tono con nuestra ineludible realidad fiscal.

Un análisis desapasionado y objetivo del problema revela que no hay una solución perfecta; sino que estamos obligados a mirar el macro de nuestros gastos e ingresos para tomar las decisiones responsables que tenemos que tomar. Estas decisiones no se toman a la ligera ni mucho menos con indiferencia hacia los distintos sectores de nuestra sociedad y sus particulares reclamos. Todo lo contrario. Precisamente porque somos conscientes de los problemas económicos que a todas y todos nos han afectado es que actuamos responsablemente para atajar a tiempo el déficit presupuestario. Nuestras actuaciones van dirigidas a mantener abierto el mayor número de tribunales, garantizar el acceso a la justicia -que nunca dejará de ser una prioridad de este Tribunal- y salvaguardar a toda costa el empleo de nuestros funcionarios.

---

[30] La revisión y renegociación de contratos de arrendamiento y de otros servicios son medidas de largo alcance que continuarán llevándose a cabo con el fin de reducir costos y balancear nuestro presupuesto.

Estoy convencida que ante la complejidad de los problemas que tenemos que enfrentar, la mera retórica no es una herramienta práctica. Le hacemos un flaco servicio al País si ignoramos las decisiones forzosas que se tienen que tomar en pro de la ciudadanía y de los empleados de la Rama Judicial.

Estoy igualmente convencida que la decisión que hoy toma una mayoría de este Tribunal no es arbitraria, sino producto de meticuloso análisis. Esta representa una determinación responsable en el continuo reto de proveer una justicia efectiva a pesar de contar con menos recursos económicos. Bajo ningún concepto equivale –como aseveran los compañeros Jueces y Juezas Asociadas en sus Opiniones Disidentes– a la claudicación del acceso a la justicia. Por el contrario, es una actuación responsable cuyo fin es, precisamente, perpetuar dicho acceso. No hay lugar para este tipo de juicio cuando la Rama Judicial ha fortalecido contundentemente en los pasados años programas dirigidos a proveer mayor acceso a la justicia.[31]

Asimismo, debe quedar claro que el esquema diseñado para que personas de escasos recursos económicos puedan acudir a nuestros tribunales para hacer valer sus derechos continúa vigente en toda su extensión. Esto es, cualquier parte en un pleito puede presentar ante el tribunal una solicitud en la cual acredite su condición económica y, de

---

[31] Véase Orden Administrativa de 22 de enero de 2014 sobre Creación de la Comisión Asesora de Acceso a la Justicia, OAJP-2014-175. A modo de ejemplo, se establecieron *Salas Especializadas en Casos de Violencia Doméstica*, un *Sistema de Órdenes de Protección Automatizadas*, el *Proyecto Justicia para la Niñez*, el *Programa de Litigantes por Derecho Propio* y el *Programa de Salones Especializados en Casos de Sustancias Controladas*.

aprobarse, se le exime del pago de los correspondientes aranceles y derechos. Esto aplica también a toda persona representada por un abogado de oficio o una entidad sin fines de lucro.[32]

La complejidad del problema de insuficiencia de recursos que enfrenta la Rama Judicial nos posiciona en un dificultoso, pero ineludible, proceso de evaluación a los fines de equilibrar nuestro presupuesto. Las medidas tomadas abarcan los diversos componentes de dicho presupuesto y están pensadas para proteger nuestro sistema judicial, el acceso a la justicia y el trabajo de todas y todos los que formamos parte de esta Rama.

En nada favorece que nosotros, las Juezas y Jueces del Tribunal Supremo de Puerto Rico, utilicemos esta coyuntura para sembrar dudas infundadas sobre el esfuerzo concienzudo que se está llevando a cabo. Durante las reuniones que antecedieron a la presente Resolución se evaluaron diversas proposiciones y alternativas. Claro que se descartaron algunas, especialmente las que proponían cursos de acción irresponsables y contrarios a derecho. Las decisiones que al final se han tomado fueron objeto de estudio e informes, y se calibraron con cuidado para actuar responsablemente y proteger el derecho de nuestro Pueblo a contar con un sistema de tribunales funcional y efectivo.

---

[32] En atención a lo expresado por el compañero Juez Asociado señor Estrella Martínez en su Voto Particular Disidente, considero importante precisar que en nuestro ordenamiento jurídico las reclamaciones laborales al amparo de la Ley Núm. 2 de 17 de octubre de 1961, según enmendada, 32 LPRA sec. 3132, están exentas del pago de derechos arancelarios.

No hubo ni hay espacio para la improvisación ingenua. Este no es el momento para mirar al pasado y ponerse a pensar sobre la conveniencia de decisiones que hace mucho fueron tomadas. Tampoco es el tiempo para discursos populistas y genéricos que se limiten a criticar sin proponer medidas concretas, realistas y válidas. Después de todo, si la preocupación sobre el acceso a la justicia es auténtica, se debe hacer más que hablar sobre ella.

El acceso a la justicia -ese derecho de todas las personas en una sociedad democrática a acudir a los tribunales, presentar su reclamo en igualdad de condiciones y obtener el remedio que en derecho proceda- requiere para su implementación de un ejercicio administrativo que lo haga posible. Es decir, de decisiones administrativas que organicen eficientemente los recursos económicos de manera que los tribunales operen con personal capacitado y suficiente, con las facilidades indispensables para atender las particularidades de los distintos casos y con los fondos necesarios para garantizar que todos nuestros ciudadanos puedan beneficiarse del sistema. Es ahí donde se mezclan el ideal y la acción. La decisión que hoy toma una mayoría de este Tribunal está fundada en esa dualidad. Por eso, estamos convencidos de que ante la precariedad económica que atravesamos, la toma de decisiones como las actuales nos encamina en la dirección correcta para de verdad salvaguardar principios esenciales de justicia y equidad.

Como una de las tres Ramas del Estado Libre Asociado de Puerto Rico, nos corresponde hacer los ajustes para preservar la integridad de los servicios que ofrecemos y cumplir nuestro deber constitucional. Sería iluso y temerario de nuestra parte limitarnos a gestionar que no se recorte nuestro presupuesto; más aún esperar hasta mayo cuando se apruebe el presupuesto del próximo año fiscal para constatar lo que ya se sabe: que hay y habrá un desfase en el presupuesto de la Rama Judicial.

Hablar ahora de lo que se debió hacer ante el recorte presupuestario del año pasado no resuelve el problema. La pregunta que hay que atender es: ¿qué vamos a hacer para balancear el déficit actual y para atender el déficit que habrá en el presupuesto del próximo año fiscal? Ninguna de las Opiniones Disidentes ofrece una solución real y concreta de cómo resolver el problema. Cabe señalar que los cuatro Jueces que hoy disienten conocen a cabalidad el problema presupuestario que existe desde el año pasado. No obstante, no han sabido preocuparse y mucho menos proponer un curso de acción válido que ataje el problema. Y es que siempre es más fácil criticar que proponer o resolver.

Administrar juiciosa y valientemente es atender el desfase actual, anticipar los problemas que vendrán y actuar responsablemente para tratar de resolverlos. Por el contrario, hablar de supuestas "acciones legales contra las Ramas que provocaron esta crisis", simplificar la discusión a una trasnochada dicotomía entre "poderosos" y "débiles", y tergiversar la razón de las medidas que se

están tomando para pintarnos como conspiradores en contra de nuestro Pueblo no es más que escudarse sumisamente tras la quimera y la demagogia.

En síntesis, las decisiones que hoy adopta una mayoría de este Tribunal son el resultado de un proceso de reflexión y análisis para mantener la efectividad de nuestro sistema judicial ante las limitaciones económicas que ya sabemos. Van dirigidas a evitar el cierre de tribunales y el despido de empleados, a continuar proveyendo los recursos que facilitan la tramitación de controversias, así como a preservar el esquema que permite que litigantes de escasos medios económicos puedan hacer valer sus derechos, entre otros servicios más.

Esta compleja pero imperiosa labor la realizamos de cara a la realidad, con responsabilidad y compromiso hacia nuestro Pueblo. Así, estoy convencida de que lo que sí incentiva la incredulidad son las meras palabras sin respaldo, las soluciones llanas y las actuaciones imprudentes. Por el contrario, la exposición honesta de los problemas y de las medidas difíciles pero necesarias para aplacarlos, acompañado de la actuación comprometida y esforzada para hacerlas cumplir, enlaza voluntades y alimenta la confianza.

Por último, resulta sumamente preocupante que miembros de este Tribunal divulguen a los medios de comunicación documentos internos y confidenciales que aún

no se han certificado.[33] Si bien la práctica de librar sus batallas en los medios se ha tornado en la norma para algunos, no deja de ser alarmante y denota falta de seriedad, integridad, madurez y circunspección.


                                Maite D. Oronoz Rodríguez
                                     Jueza Asociada

---

[33] La información divulgada a los medios se le entregó a los Jueces y Juezas de este Tribunal en sobres sellados y marcados "confidencial". Cualquier divulgación es pues responsabilidad de los miembros del Pleno.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y otro Personal de la Rama Judicial que ejerce funciones de recaudación | ER-20015-1 | |

Voto Particular Disidente emitido por la Jueza Asociada señora Pabón Charneco, al cual se unieron los Jueces Asociados señores Kolthoff Caraballo y Rivera García.

En San Juan, Puerto Rico, a 9 de marzo de 2015.

> *"Access to justice has been defined as the set of conditions that allow the equal use of laws and procedural mechanisms to prevent the violation of rights, to secure legal remedies and to resolve controversies.* **There can't be access to justice if you can't even get a court to hear your case** *or if you don't even know that such a thing is possible."*
> *-Liana Fiol Matta-*
> *Noviembre de 2014[34]*

La decisión que anuncia hoy una Mayoría de este Tribunal constituye un uso arbitrario del "Poder"; no del "poder" que nos confieren las leyes y la Constitución de Puerto Rico,

___

[34] L. Fiol Matta, *Access to Justice and the Courts*, Trinity Washington Unviersity, págs. 12-13, *disponible en* http://www.ramajudicial.pr/Prensa/Galerias/2015/02-04-15c/doc/Access-Justice-Courts.pdf

sino del "Poder" como concepto de una comunidad política desarrollada. Lamentablemente, hoy cinco (5) compañeros han debilitado el acceso a la justicia en Puerto Rico al aumentar los costos que conllevan virtualmente todos los procedimientos judiciales en la Isla. Ello en momentos en que es evidente que el Pueblo no aguanta más aumentos en los costos económicos de su vida a causa de sus instituciones gubernamentales.

El "acceso a la justicia" no puede ser un estribillo amorfo que solamente abracemos en la comodidad de los discursos y los círculos académicos. Si el acceso a la justicia en realidad es un valor que perseguimos como Rama Judicial, es en determinaciones como las de hoy en donde a fin de cuentas ese valor debe defenderse a capa y espada. Después de todo, la oda en discursos al acceso a la justicia la recordarán pocos, a diferencia de las decisiones como las que hoy se anuncian.

Como soy consciente que el "Poder" que ostento le pertenece en última instancia al Pueblo, me rehúso prestar mi voto para una determinación arbitraria, caprichosa e irresponsable. Por ello, al igual que otros cuatro compañeros, DISIENTO enérgicamente del aumento arancelario que hoy se solicita.

I

Hace menos de cinco (5) años, este Tribunal, de forma unánime, solicitó a la Asamblea Legislativa que se aprobara un nuevo esquema arancelario para los procedimientos ante los tribunales de Puerto Rico. *Véase, In re Aprobación Der.*

*Arancelarios R.J.*, 179 D.P.R. 985 (2010). En aquel momento se realizó un estudio ponderado y se estableció un nuevo sistema arancelario de pago único, más sencillo, de fácil manejo para los profesionales del Derecho y en beneficio de los ciudadanos que harían uso de la Rama Judicial para atender una amalgama de asuntos cotidianos que van desde una declaratoria de herederos, divorcios, hasta casos en que se reclamen violaciones de derechos constitucionales.

Desde entonces nadie duda que la situación económica de Puerto Rico ha empeorado. Estos momentos de turbulencia económica incluso han afectado a la Rama Judicial, la cual para el año fiscal 2014-2015 vio disminuido su presupuesto en casi cincuenta y cuatro millones de dólares ($54,000,000.00). En medio de esta tormenta, la dirección de nuestra Rama también ha cambiado. Ya en una ocasión anterior había expresado que se necesitaba un cambio en la dirección de la Oficina de Administración de los Tribunales (O.A.T.). *Véase*, *In Re Enmiendas a las Reglas de Disciplina Judicial*, 2013 T.S.P.R. 105 (Voto de Conformidad Pabón Charneco, J.). Afortunadamente, la actual Directora Administrativa de los Tribunales, Hon. Isabel Llompart Zeno, ha realizado una encomiable labor desde que asumió su puesto hace algunos meses. Me conforta que la dirección de la O.A.T. esté en sus manos, particularmente en estos tiempos de estrechez económica.

Sin embargo, la Directora Administrativa no tiene el control total de la Administración de la Rama Judicial en Puerto Rico. Por ende, su capacidad para manejar los asuntos

fiscales de esta Rama se ve limitada por el poder administrativo que ostenta, en parte, la Jueza Presidenta señora Fiol Matta.

Es ante este escenario que hace unas semanas la Jueza Presidenta convocó al Pleno de este Tribunal para discutir asuntos concernientes a la situación económica de la Rama Judicial. En la primera reunión extraordinaria la compañera Jueza Presidenta hizo una presentación del panorama económico de la Rama y resumió algunas medidas que había llevado a cabo para mejor la salud fiscal de los tribunales en Puerto Rico. Para mi sorpresa, la Jueza Presidenta nos anunció que, luego de realizado un Informe por parte del Comité Técnico creado por la Ley Núm. 47-2009, se proponía recomendarnos que le solicitáramos a la Asamblea Legislativa la aprobación de un aumento en los aranceles de los tribunales de Puerto Rico.

En ese momento varios compañeros le expresamos a la Jueza Presidenta que, antes de proveer nuestra anuencia para un aumento en los aranceles de los tribunales, necesitábamos contar con más datos en cuanto a los gastos operacionales de la O.A.T. Ello ante la información que ha trascendido públicamente en cuanto al pago de cantidades millonarias en el canon de arrendamiento de las nuevas facilidades del Tribunal de Caguas.[35]

Para mi sorpresa, el día después de esta reunión extraordinaria del Pleno, la Jueza Presidenta circuló un

---

[35] La información que ha transcendido públicamente revela que la Rama Judicial pagó alrededor de ocho millones de dólares ($8,000,000.00) en arrendamiento para un edificio que, al momento de entregarse, aún no estaba habilitado para las funciones judiciales.

sobre marcado "Confidencial" en el que, entre otras, se incluía la Resolución que hoy se certifica. En esta se proponía la adopción completa del Informe sometido por el Comité Técnico y un correspondiente aumento de alrededor de veinte por ciento (20%) en los aranceles de los Tribunales de Puerto Rico.

Días después se volvió a convocar a una Reunión extraordinaria del Pleno del Tribunal. La compañera Jueza Presidenta nuevamente se limitó a compartir verbalmente con el resto de los miembros del Tribunal una serie de datos aislados en cuanto a la salud fiscal de la Rama Judicial. Sin embargo, no se nos proveyó un desglose de los gastos de la O.A.T., ni de algún tipo de procedimiento alterno para evitar tener que solicitar un alza de los aranceles. Es decir, la única alternativa sobre la mesa era un aumento arancelario. Lamentablemente, cinco (5) compañeros jueces decidieron ejercer su voto "a ciegas" y dieron su anuencia para la Resolución que hoy se certifica.

Según mencionado, en ningún momento se nos proveyó a los miembros del Tribunal un desglose –aunque fuera a grandes rasgos– de los gastos operacionales de la O.A.T. Es decir, en medio de un ambiente económico difícil y ante una política pública de aumentos tributarios, una Mayoría de este Tribunal prefirió aumentar el costo de acceso a los tribunales en Puerto Rico antes de enrollarse las mangas y estudiar si existen gastos administrativos en la O.A.T. que puedan disminuirse. Me parece que este es un ejercicio muy

irresponsable del "Poder" que ostenta cada Juez de este Tribunal.

Con la Resolución que hoy se certifica se propone un aumento que, a final de cuentas, se proyecta que traerá a la Rama Judicial poco más de dos millones de dólares ($2,000,000.00) adicionales. Tal cantidad a primera vista parece considerable, pero el propio Comité Técnico en su Informe expresa que esa cantidad adicional "no resulta notable".[36] En otras palabras, en el macro la Rama Judicial ingresara a sus arcas una cantidad poco considerable, mientras que en el micro los ciudadanos verán reflejado un aumento de 20% en los aranceles que deben pagar antes de acceder a los tribunales de Puerto Rico.[37]

Para mi tranquilidad mental, y debido a que me rehúso a ejercer mi autoridad constitucional en el vacío, decidí realizar un análisis más completo, el cual incluyó una investigación en el portal cibernético de la Oficina de la Contralora de Puerto Rico para encontrar algunos contratos que ha suscrito la O.A.T. en el año fiscal 2014-2015. Ello debido a que, como mencioné, esa información no se nos hizo disponible al momento de considerar la Resolución que hoy se certifica. Con tan solo varias horas de investigación, lo que encontré me causó una gran frustración y, francamente, un coraje inmenso al ver parte de los gastos que algunos de mis

---

[36] Oficina de Administración de los Tribunales, *Informe Técnico sobre los Nuevos Derechos de Aranceles por el Trámite de Acciones Civiles en el Tribunal General de Justicia*, 17 de febrero de 2015, pág. 23.

[37] Por ejemplo, un ciudadano promedio ahora tendrá que pagar, en adición a los honorarios de abogados y los impuestos aplicables a ese servicio, veinte dólares ($20) adicionales en aranceles para un apelación ante el Tribunal Supremo.

compañeros rehusaron considerar antes de aumentar los aranceles de los tribunales.  A continuación, una pequeña muestra.

II

Para el año fiscal 2014-2015, el Registro de Contratos de la Oficina de la Contralora de Puerto Rico revela que la O.A.T. ha pactado una serie de contratos en calidad de "Servicios Legales". Entre los más sorprendentes, se encuentra uno por la cantidad de cincuenta mil dólares ($50,000.00) con el bufete McConnel Valdés.[38] Si tomamos en consideración unos trece (13) contratos adicionales, se revela que en tan solo estos contratos la O.A.T. ha pactado la suma de **cuatrocientos setenta y tres mil ciento ochenta dólares ($473,180.00)** en calidad de "Servicios Legales".[39] Esa suma –que no puedo certificar que representa la cantidad total de gastos en servicios legales ante la ausencia de información en que nos encontramos algunos miembros del Tribunal- me parece exorbitante. Ello particularmente cuando la O.A.T. cuenta con una de las divisiones de asuntos legales más grande del Gobierno. Cabe preguntarse si, en tiempos de estrechez económica, esta cantidad de gastos en "servicios legales" es defendible o absolutamente necesaria. Como mínimo debimos evaluarla completamente antes de considerar aumentar los aranceles de los tribunales.

---

[38] Véase, Oficina del Contralor,  Contrato O.A.T. Número 2015-00039, firmando el 31 de julio de 2014 con vigencia hasta el 30 de junio de 2015.

[39] Véase, Oficina del Contralor, Contratos de O.A.T. Número 2015-00001, 2015-000063, 2014-000039, 2015-000003, 2015-000008, 2014-000236, 2015-000011, 2015-000081, 2015-000048, 2015-000240, 2015-000043, 2014-000105, 2015-000015.

Otro contrato considerable fue uno pactado por "Servicios de Oficial de Prensa" con la firma Eje Puerto Rico, Inc. El 5 de agosto de 2014 se firmó un contrato con vigencia hasta el 30 de junio de 2015 por la cantidad de **ciento cincuenta mil dólares ($150,000.00).**[40] Cabe preguntarse si en tiempos de estrechez económica este tipo de gasto es aconsejable.

Por otro lado, en el listado de contratos que pude revisar encontré que la O.A.T. ha pactado diversos contratos en calidad de "Servicios de Trabajador Social, Consejero o Psicólogo". Si tomamos en consideración ocho (8) de esos contratos, se llega a la suma de **trescientos ochenta y cuatro mil ochocientos ochenta y cinco dólares ($384,885.00)** gastados en servicios de trabajador social.[41] Nuevamente, reconozco que la Rama Judicial probablemente tiene necesidad de estos servicios, pero cabe preguntarse si ante la realidad económica que vivimos esa cantidad es un gasto exorbitante. La Mayoría que hoy certifica la Resolución de epígrafe ni siquiera consideró estos contratos.

**Si sumamos todos estos gastos discutidos anteriormente, se llega a la cantidad de un millón ocho mil sesenta y cinco dólares ($1,008,065.00) en contratos de servicios legales, publicidad y trabajadores sociales. Ello solo tomando en consideración los contratos mencionados en este Voto**

---

[40] Véase, Oficina del Contralor, Contrato O.A.T. Número 2015-00041, firmando el 5 de agosto de 2014 con vigencia hasta el 30 de junio de 2015.

[41] Véase, Oficina del Contralor, Contratos de O.A.T. Número 2014-000225, 2015-000004, 2015-000016, 2015-000031, 2015-000051, 2015-000007, 2015-000032, 2015-000046, 2014-000022.

Particular.    **Esto representa casi la mitad de lo que se cobraría con el aumento de aranceles que hoy se solicita.**

Según mencioné, este estudio lo realicé en tan solo algunas horas utilizando exclusivamente el portal cibernético de la Oficina de la Contralora. Por lo tanto, no pretendo que sea considerado como un estudio exhaustivo ni preciso del tema. Sin embargo, me vi obligada a realizarlo ya que esta información no le fue entregada a los miembros del Tribunal al momento de discutir el aumento arancelario que hoy se propone. Como el "Poder" no puede ejercerse en el vacío, no puedo estar conforme con un aumento en los aranceles al enterarme del tipo de gastos que está ocurriendo en la O.A.T. Ciertamente, algunos de estos gastos son explicables y probablemente necesarios, pero como mínimo debíamos evaluar si se podían recortar gastos a nivel de la O.A.T. antes de pasarle la factura al Pueblo a través de un aumento arancelario que representa otro aumento más en la vida cotidiana de todos los puertorriqueños.

III

Lo anterior demuestra que, lamentablemente, cinco (5) de mis compañeros tomaron la ruta fácil al momento de manejar la situación económica de la Rama Judicial. Era mucho más conveniente solicitar un aumento arancelario –**pagable por el Pueblo**– que sentarse a escudriñar concienzudamente los gastos de nuestra Rama y preguntarnos si en realidad podemos gastar más de un millón de dólares en contratos de servicios legales, publicidad, trabajadores sociales privados, etc. **El record es claro en que existen gastos en la Rama Judicial que**

**no son defendibles en tiempos de estrechez económica.** Estos van desde cánones de arrendamiento exorbitantes hasta pactos con contratistas independientes por servicios profesionales. Antes de pasarle esa factura al Pueblo, lo correcto era escudriñar esos gastos en aras de poner nuestra propia casa en orden, en vez de automáticamente acudir a los bolsillos de los ciudadanos que necesitan los servicios de la Rama Judicial. Es por eso que el voto a ciegas que acaba de emitir una mayoría de miembros de este Tribunal es arbitrario y una muestra del uso del "Poder" al desnudo.[42]

La verdadera fibra de los que ostentan algún tipo de "Poder" se mide cuando llega el momento de tomar decisiones difíciles. Existe una base invisible en la que todo nuestro pacto social se sustenta: que aquellos al que el Pueblo les ha delegado el "Poder" lo usaran, como mínimo, de manera concienzuda, con toda la información necesaria sobre la mesa. El Pueblo no nos ha concedido el "Poder" para manejar los asuntos económicos como si se tratara de jugar a la ruleta.

**La Resolución que se certifica hoy no se tomó con toda la información pertinente disponible para los miembros de este Tribunal.** El que cinco (5) compañeros ejerzan su voto hoy a ciegas es lamentable, pero me causa mucha frustración el que probablemente esta no sea la última decisión arbitraria tomada por una mayoría del Tribunal en cuanto a la

---

[42] Espero que la Rama Legislativa haga uso de sus facultades constitucionales y estudie la propuesta que hoy se certifica con todos los datos pertinentes disponibles. Según ha trascendido públicamente, varios miembros del cuerpo constitucional hermano han expresado dudas en cuanto a las medidas aprobadas por una Mayoría de este Tribunal. Véase, *Llamado a la Calma para Fiol Matta*, M. Rivera Sánchez, El Vocero, 9 de marzo de 2015, pág. 8.

situación económica de la Rama Judicial: nubes de tormenta se asoman en el horizonte. Solo espero que exista todavía una fibra moral fuerte en el seno de este Tribunal para enfrentarlas.


                                    Mildred G. Pabón Charneco
                                         Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


In re:

    Aprobación de los Derechos
Arancelarios pagaderos a          ER-2015-1
los(as)     Secretarios(as),
los(as) Alguaciles(as) y a
otro Personal de la Rama
Judicial    que    ejerce
funciones de recaudación


Voto Particular Disidente emitido por el Juez Asociado señor Kolthoff Caraballo al cual se unieron la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Rivera García y Estrella Martínez


San Juan, Puerto Rico, a 9 de marzo de 2015.


Mientras esta Rama constitucional paga **sobre 50 millones** de dólares anuales en cánones de arrendamiento a una élite muy reducida de arrendadores, hoy una mayoría de este Tribunal increíblemente decide castigar a los que ya se encuentran más que lastimados. Con el voto a ciegas de una mayoría, se le añade una carga adicional al Pueblo al aumentar unos aranceles que fueron revisados apenas cuatro años atrás.

Además, y como si fuera poco, se lastima con recortes en sus beneficios a nuestros empleados, que todavía no se recuperan de lo que

este mismo bloque mayoritario[43] permitió al ratificar la constitucionalidad de la Ley Núm. 3-2013, ley que menoscabó sustancialmente los beneficios del Sistema de Retiro de nuestros empleados de la Rama Judicial.

La razón que esboza esta vez la mayoría para justificar su acción es la crisis en las finanzas de nuestra Rama Judicial, provocada por el recorte en el presupuesto actual. Sin embargo, lo cierto es que la crisis financiera y fiscal que hoy sufre esta rama no responde únicamente al (*prima facie*) cuestionable recorte presupuestario impuesto por las ramas políticas. Sería, sin duda, una hipocresía el que se intentara expiar toda la culpa con semejante ternero. La crisis financiera y fiscal de nuestra Rama Judicial obedece -en gran medida- al desenfreno en la contratación de arrendamientos y servicios que por años han desangrado a nivel de hemorragia arterial nuestras arcas y que, claro está, ha venido a hacer crisis en el presente presupuesto.

Y, en medio de tal descontrol, las ganancias para algunos han sido impúdicas. ¿O acaso alguien piensa que la reciente no renovación de los contratos de arrendamientos de los edificios de la Oficina de la Administración de los Tribunales y el Tribunal de Apelaciones obedeció únicamente a la precaria situación financiera y fiscal de la Rama Judicial? **No. Lo cierto es que, ante la negativa del arrendador de modificar lo que era un contrato atroz y ciertamente cuestionable, correctamente se decidió terminar la relación contractual.**

---

[43] Con la excepción de la Jueza Asociada Oronoz Rodríguez, quien en ese momento todavía no era parte de esta Curia.

La pregunta que cabe entonces es ¿y los demás contratos de arrendamientos, cuán razonables son? ¿Se justificaban los diseños de tales edificios (en algunos casos faraónicos) y sobre todo sus costos? ¿Hacía falta esto realmente? ¿Se debieron haber iniciado tales obras ante la crisis que a claras luces se asomaba sobre la Rama Judicial? Estas son preguntas que carecen de una contestación cierta al momento.

Desconocemos también si esta élite empresarial de arrendadores estaría dispuesta a ceder algo en los cánones de arrendamiento, presionados por un reclamo firme y decidido en demanda de solidaridad en primer lugar, y razonabilidad o equidad en la alternativa.

Aclaro, sin embargo, que mi reclamo no se enmarca en un llamado a las luchas entre clases o de la utópica dictadura del proletariado. Se trata simplemente de la sensibilidad por parte de estos empresarios de considerar una reducción temporera en sus márgenes de ganancias, en pro de la "ganancia" de un pueblo asalariado que observa cómo aquello por lo que ha luchado, cada vez más viene a menos.

Y si fuera que tal llamado no recibiera la respuesta esperada, se imponía entonces una presión firme, que de alguna manera despertara las conciencias de estos empresarios o los hiciera reconsiderar ante lo insensato de dar coces contra el aguijón. Sin embargo, tal presión no se dio y lo peor es que -al menos para mí- no está claro el porqué.

Lo que sí está claro es que con la acción de esta mayoría, aquellos que sin duda en nada han contribuido a esta

precaria situación financiera y fiscal, son los mismos que nuevamente terminan pagando los platos rotos de una fina vajilla en la que ni siquiera han podido tomarse un pocillo de café.

Por todo lo anterior, no me queda otro remedio que disentir con todas las fuerzas de mi espíritu.


Erick V. Kolthoff Caraballo
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

| | |
|---|---|
| Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación. | ER-2015-1 |

**Voto particular disidente emitido por el Juez Asociado señor Rivera García al cual se unen la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Estrella Martínez**

En San Juan, Puerto Rico, a 9 de marzo de 2015.

Disiento enérgicamente de la determinación que hoy anuncia este Tribunal de revisar por segunda ocasión *en menos de cinco años* los derechos arancelarios, porque se trata de una medida que va en detrimento del principio cardinal de acceso a la justicia que debe regir en la Rama Judicial en *todo* momento.[44] Máxime cuando este

---

[44] Véase, Exposición de Motivos de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico, Ley Núm. 201-2003. Véase, además, Rama Judicial de Puerto Rico, "Imperativo Estratégico III: Acceso a la justicia para todos y todas", *Plan Estratégico de la Rama Judicial de Puerto Rico 2012–2015*, págs. 33-34. Disponible en: http://www.ramajudicial.pr/orientacion/informes/rama/Plan-estrategico-2012-2015.pdf. (Última visita, 5 de marzo de 2015).

nefasto curso de acción es el resultado directo de la desidia incurrida por los administradores de la Rama Judicial, quienes en un ejercicio de inconcebible sumisión a las ramas políticas del Gobierno de Puerto Rico, se niegan a utilizar todos los mecanismos a su alcance para impugnar los recortes presupuestarios impuestos por la Asamblea Legislativa.

La dramática reducción de $53.9 millones del presupuesto de la Rama Judicial indudablemente implicaba la adopción de medidas que tendrían un efecto directo en nuestra capacidad para cumplir nuestras *funciones constitucionales*. Como tal, era una medida que debió combatirse desde todos los frentes, no como un ejercicio de mezquindad e insolidaridad, sino como una reivindicación de que en momentos de crisis se pueden sacrificar muchas cosas, excepto, la viabilidad de nuestros ciudadanos de acceder a los tribunales para obtener un remedio rápido y adecuado.

Esa debió ser la posición que asumieran los administradores de la Rama Judicial, salvo que implícitamente estuvieran reconociendo que para el año fiscal 2014-2015 nos correspondía un presupuesto que sobrepasaba nuestras necesidades. Ahora bien, tal no parece ser el caso, pues desde entonces la compañera Jueza Presidenta señora Fiol Matta ha actuado bajo el entendido de un desfase presupuestario, y como consecuencia, ha

decretado el *cierre total de once salas de Tribunales de Primera Instancia* además de cierres parciales en otros tribunales, y la suspensión de nuevas salas especializadas de drogas, de violencia doméstica, del programa de apoyo a los litigantes por derecho propio e incluso el proyecto de presentación electrónica de casos, conocido como el Sistema Unificado de Administración de Casos (SUMAC), entre otras iniciativas. No hay que indagar a mayor profundidad para concluir que estas medidas representan un *retroceso sin precedentes* en nuestra política pública de acceso a la justicia.

Lamentablemente, hoy cuatro miembros de esta Curia – *guiados, quizás, por su distanciamiento sobre lo que representa practicar la abogacía día a día ante nuestros tribunales y las vicisitudes que nuestros ciudadanos pasan para poder acudir a los mismos* - se unen a la Jueza Presidenta para añadir un nuevo capítulo a este fatídico trayecto. Así, inicialmente avalan un plan que no tan solo conlleva el aumento de los derechos arancelarios y en el costo de otros servicios provistos en nuestros tribunales, sino que a su vez incluye una disminución en los beneficios que reciben los miles de empleados de la Rama Judicial.[45] Ante esta situación, me veo precisado a emitir unas breves expresiones dirigidas a consignar y

---

[45] Véase, Resolución "Para eliminar el inciso (d) del Artículo 10.9; enmendar los Artículos 18.1, 19.1, 19.9 y 19.10 del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, según enmendado", aprobada el 6 de marzo de 2015.

contextualizar las razones por las cuales rechazo contundentemente la Resolución que emite este Tribunal.

**I**

El presupuesto gubernamental es un plan programático anual en el que se detalla cómo se va a financiar toda la actividad pertinente al ejercicio de la gobernanza.[46] En el caso particular de Puerto Rico, nuestra Constitución específicamente delega este proceso a la Rama Ejecutiva y a la Rama Legislativa.[47] Siendo así, la Rama Judicial no tiene una injerencia directa en el proceso y su participación, generalmente, se ha limitado a una presentación de las necesidades presupuestarias y posterior petición de fondos ante la Asamblea Legislativa.

Como consecuencia de este esquema, y por aproximadamente cincuenta años, el presupuesto asignado a la Rama Judicial quedó al arbitrio del Poder Ejecutivo y del Poder Legislativo. Ese modelo históricamente levantó serios cuestionamientos sobre las implicaciones de esta dinámica en el principio de separación de poderes y en la independencia judicial que debe existir bajo nuestra

---

[46] Véase, R.C. Chandler & J.C. Plano, *The Public Administration Dictionary*, 2da ed., Santa Barbara, California, 1988, págs. 329-330. Véase, además, A.L. Guzmán Santiago, *Aspectos legales del proceso presupuestario del Gobierno del Estado Libre Asociado de Puerto Rico*, 35 Rev. Jur. UPR 291 (1966).

[47] Véanse, Art. IV, Sec. 4; Art. VI, Secs. 6-8, Const. ELA, LPRA, Tomo 1, ed. 2008, págs. 403 y 427-428. Véase, además, 4 Diario de Sesiones de la Convención Constituyente de Puerto Rico 2587 (1961).

Constitución.[48] A fin de eliminar esta arbitrariedad, y luego de múltiples intentos para fortalecer el balance entre las tres ramas de gobierno, en el año 2002 se enmendó la Ley Orgánica de la Oficina de Gerencia de Presupuesto para establecer que los fondos asignados al Poder Judicial serían determinados a base de un por ciento fijo aplicado al monto total de las rentas anuales

---

[48] Véase, e.g., el informe *La independencia judicial en Puerto Rico*, en el cual el Comité Asesor designado en ese momento por el Tribunal Supremo expresó lo siguiente:

> *[L]a independencia del Poder Judicial se afecta en la medida en que las otras dos ramas de gobierno, a través del control de las asignaciones de fondos, puedan limitar su capacidad de satisfacer las necesidades básicas del sistema e impedir el desarrollo de proyectos especiales y medidas de importancia encaminadas a obtener mayor eficiencia*. Esto se traduce inevitablemente en una baja en la calidad de la administración de la justicia, aun cuando la facultad de adjudicar no se afecte directamente en casos específicos. Varios estudios realizados por la Rama Judicial sobre el funcionamiento y eficiencia de su organización revelan esta estrecha relación y señalan que, en gran medida, la insuficiencia de fondos tradicionalmente asignados ha producido una serie de necesidades y problemas en el sistema. (Énfasis suplido).

Secretariado de la Conferencia Judicial, *La independencia judicial en Puerto Rico*, Oct. 1988, pág. 115.

La necesidad de la implantación de una fórmula que eliminara la arbitrariedad de las ramas políticas en la asignación presupuestaria, de manera que la Rama Judicial lograra una mayor autonomía dentro de los límites y el balance de poderes que impone nuestra Constitución, era un reclamo constante, pero insistentemente ignorado. Véase, e.g., Secretariado de la Conferencia Judicial, *La judicatura puertorriqueña*, Oct. 1981. Se planteaba en aquel entonces que "la rama judicial debe disfrutar de un nivel de autonomía fiscal y presupuestario que le permita allegar los fondos necesarios para su adecuado funcionamiento, *libre de cualquier intervención que pueda coartar o limitar el desempeño de sus funciones constitucionales y el logro de sus aspiraciones y objetivos*". (Énfasis suplido). Íd., pág. 376. Siendo así, se recomendó implantar el mecanismo de fórmula, ya que "fortalecería significativamente el principio fundamental de la separación de poderes contenido en nuestra Constitución". Íd., pág. 377.

ingresadas al Fondo General del Tesoro de Puerto Rico.[49] En

aquella ocasión, la Asamblea Legislativa sostuvo que,

> [e]sta Ley permitirá una efectiva y plena
> autonomía presupuestaria para la Rama Judicial
> y hará posible, mediante la fórmula propuesta,
> que los esfuerzos dirigidos a ofrecer servicios
> judiciales de excelencia y verdaderas reformas
> en la administración de la justicia, se vayan
> implementando y expandiendo en relación y a
> tono con los recursos con que cuente el Estado
> en determinado año. *Además, hará posible la*
> *efectiva instrumentación del principio*
> *fundamental y básico de la separación de*
> *poderes contenido en nuestra Constitución y el*

---

[49] Véase, Art. 1 de la Ley Núm. 286-2002, el cual enmendó el Art. 4, inciso (7) de la Ley Núm. 147 de 18 de junio de 1980, conocida como "Ley Orgánica de la Oficina de Gerencia y Presupuesto". El Art. 1 de la Ley Núm. 286-2002 lee, en su parte aquí pertinente, de la manera siguiente:

> Comenzando con el año fiscal 2003-2004, a la Rama
> Judicial se le asignará una cantidad equivalente al tres
> punto tres (3.3%) por ciento del promedio del monto total
> de las rentas anuales obtenidas de acuerdo con las
> disposiciones de las leyes del Estado Libre Asociado de
> Puerto Rico e ingresadas en el Fondo General del Tesoro
> de Puerto Rico en los dos (2) años económicos anteriores
> al año corriente, disponiéndose que en caso de que el
> promedio del monto total de las rentas anuales sea menor
> que el año precedente, la cantidad base será igual a la
> última asignación anual recibida por la Rama Judicial.
> Dicho tres punto tres (3.3%) por ciento se aumentará para
> el año fiscal 2004-2005 en una décima (0.1) del uno (1%)
> por ciento y durante los próximos tres (3) años fiscales
> en dos décimas (0.2) del uno (1%) por ciento hasta
> alcanzar un máximo de cuatro (4%) por ciento de los
> ingresos del Fondo General del Tesoro de Puerto Rico para
> el año fiscal 2007-2008. Estos recursos se utilizarán
> para los gastos operacionales de funcionamiento de la
> Rama Judicial. En caso de que la Rama Judicial
> requiriese cantidades adicionales a las asignadas
> conforme a esta Ley para el desarrollo, construcción y
> ampliación de su obra física o para cualquier otro
> propósito, someterá directamente a la Asamblea
> Legislativa las peticiones presupuestarias necesarias con
> sus justificaciones. Las recomendaciones y peticiones
> para asignaciones de cantidades englobadas en el proyecto
> de presupuesto general para cada organismo gubernamental
> estarán respaldadas en el Presupuesto que se someta por
> cálculos detallados, por partidas de gastos y por
> programas o actividades.

Véase, además, Ley Núm. 59-2007 en la cual se aclara el término "fondo general" para efectos de calcular la fórmula aplicable a la Rama Judicial.

> *logro del más adecuado balance y equilibrio entre las tres ramas de gobierno, al proveer a la Rama Judicial el mecanismo para una efectiva autonomía presupuestaria a fin de que desarrolle como Rama igual e independiente sus programas y logre plenamente sus objetivos y su encomienda constitucional*. (Énfasis suplido).[50]

Conforme a esta fórmula y al correspondiente ajuste por el cierre del año fiscal anterior, la Rama Judicial debía recibir un total de $376.9 millones para el corriente año fiscal 2014-2015.[51] En su lugar, la Asamblea Legislativa acogió la recomendación presentada por la Oficina de Gerencia y Presupuesto y asignó a la Rama Judicial $322.9 millones. A esta cantidad se le sumaron $3.1 millones por concepto de un pago parcial de la deuda existente relacionada a la implantación del impuesto sobre ventas y uso, lo cual redundó en un total combinado de $326 millones provenientes del Fondo General.[52] Esto representó una diferencia de $53.9 millones menos a lo que le correspondía a la Rama Judicial por virtud de la fórmula establecida en la Ley Núm. 286-2002.[53]

---

[50] Exposición de Motivos de la Ley Núm. 286, supra. 2002 LPR 1438-1440.

[51] Esto, según el cálculo realizado por la Oficina para la Administración de los Tribunales. Véase, *Ponencia de la Directora Administrativa de los Tribunales, Año fiscal 2014-2015*, presentada ante la Comisión de Hacienda y Finanzas Públicas del Senado de Puerto Rico, 5 de junio de 2014, pág. 13.

[52] Véase, *Presupuesto del Tribunal General de Justicia para el año fiscal 2014-2015*, disponible en: http://www2.pr.gov/presupuestos/Presu puesto2014-2015/PresupuestosAgencias/010.htm. (Última visita, 5 de marzo de 2015).

[53] Esto pues de acuerdo a las disposiciones de la Ley Núm. 66-2014, Ley Especial de Sostenibilidad Fiscal y Operacional del Gobierno del Estado Libre Asociado de Puerto Rico, el presupuesto de la Rama Judicial sería el "equivalente a su respectivo presupuesto del año

Para ubicar esta reducción presupuestaria en perspectiva y tengamos una idea de su magnitud, basta notar, por ejemplo, que para el año fiscal 2012-2013 la discrepancia entre lo que correspondía por la fórmula y lo recomendado por el Poder Ejecutivo se limitaba a $7.2 millones.[54] Mientras que la diferencia para el año fiscal 2013-2014 se circunscribió a $6 millones.[55] Sin embargo, estas diferencias siempre fueron trabajadas y desde la aprobación de la Ley Núm. 286-2002, la Asamblea Legislativa ha honrado la cantidad correspondiente a la fórmula, excepto, durante los últimos dos años fiscales 2013-2014 y 2014-2015. Así que en comparación, la reducción de $53.9 millones para el presente año fiscal indudablemente representa un golpe dramático y sin igual en los últimos once años.

Si bien esta merma en la asignación del presupuesto no debió ser motivo de sorpresa para nadie, la realidad es

---

fiscal previo, ajustado al porcentaje de reducción o incremento global en el Presupuesto General de Gastos con cargo al Fondo General, implícita en el presupuesto recomendado del Gobernador". Art. 24 de la Ley Núm. 66-2014. Tomando en cuenta que la cantidad asignada por fórmula a la Rama Judicial durante el año fiscal 2013-2014 fue de $348.8 millones, y aplicable a esa cantidad la correspondiente reducción ajustada de 7.4%, llegamos a un total de $322.9 millones asignados por fórmula. Es decir, $53.9 millones menos de los $376.9 millones que le correspondería a la Rama Judicial para el presente año fiscal 2014-2015.

[54] Véase, *Ponencia de la Oficina de la Administración de los Tribunales sobre el presupuesto recomendado para el año fiscal 2012-2013*, presentada ante la Comisión de Hacienda del Senado de Puerto Rico, 1 de junio de 2012, pág. 5.

[55] Véase, *Ponencia de la Oficina de la Administración de los Tribunales sobre el presupuesto recomendado para el año fiscal 2013-2014*, presentada ante la Comisión de Hacienda y Finanzas Públicas del Senado de Puerto Rico, 29 de mayo de 2013, pág. 10.

que la entonces Directora de la OAT reconoció que no había discutido con el Poder Ejecutivo el presupuesto enviado a la evaluación de la Asamblea Legislativa.[56] En otros términos, los cuerpos legislativos recibieron una recomendación presupuestaria que no contaba con el insumo de los administradores de la Rama Judicial, quienes en última instancia son los que conocen de primera mano cuáles son nuestras necesidades. En ese sentido, la OAT debió asumir un papel activo previo a la presentación del presupuesto ante la Asamblea Legislativa. Después de todo, ¿qué razón había para que la Rama Judicial se aislara de este proceso cuando era claramente predecible que la recomendación de la Rama Ejecutiva sería una disminución del presupuesto? ¿Qué limitación tenía la OAT para dialogar con los funcionarios de la Oficina de Gerencia y Presupuesto sobre las necesidades presupuestarias de la Rama Judicial? No había impedimento alguno. Simplemente hubo una cruzada de brazos con la ilusa confianza de que la Rama Ejecutiva recomendaría un presupuesto conforme a la fórmula establecida en la Ley Núm. 286-2002, a pesar de los vientos tempestuosos de la crisis fiscal por la que atraviesa el País y aun cuando la experiencia siempre ha sido que la Rama Ejecutiva recomienda un presupuesto menor al correspondido. Ello dista mucho de la dirección

---

[56] Véase, *Ponencia de la Directora Administrativa de los Tribunales, Año fiscal 2014-2015*, presentada ante la Comisión de Hacienda y Finanzas Públicas del Senado de Puerto Rico, 5 de junio de 2014, pág. 15.

diligente a la que debemos aspirar en nuestra administración de los tribunales.

Asumida esa falla, y una vez presentado el presupuesto recomendado ante los cuerpos legislativos, ya los propios administradores de la Rama Judicial se habían colocado en una posición de desventaja y desde esta tenían la responsabilidad de acudir ante nuestros legisladores con la esperanza de convencerlos de no avalar el presupuesto propuesto por el Poder Ejecutivo. A pesar de ello, y aunque tímida en su exposición, la otrora Administradora de la OAT correctamente expuso que la Asamblea Legislativa no debía aprobar el presupuesto según propuesto por el Poder Ejecutivo. Esto porque, si bien la Rama Judicial tenía el deber de cooperar en los esfuerzos dirigidos a lograr una pronta recuperación fiscal, la realidad era que se nos estaba imponiendo unos *recortes presupuestarios arbitrarios y desproporcionados* en comparación con otras entidades gubernamentales que, cuando menos, distan de ser una rama constitucional de gobierno. Sobre este particular, la pasada directora administrativa expresó lo siguiente:

> En la Rama Judicial somos conscientes de la situación de estrechez fiscal que enfrenta el País y de la necesidad de tomar medidas inmediatas para hacer frente a los múltiples retos que dicha condición supone. Cónsono con ello y como uno de los poderes constitucionales que conforman el Gobierno del Estado Libre Asociado de Puerto Rico, entendemos que la Rama Judicial tiene el deber moral y solidario de

contribuir a solventar la crisis económica que nos aqueja. Sin embargo, dicha contribución debe estar basada en criterios de razonabilidad y debe salvaguardar el funcionamiento de nuestro sistema judicial. *Sostenemos que la propuesta contenida en el P. del S. 1092 y la asignación contenida en la R. C. del S. 411, tal como han sido presentados, atentan contra ambos intereses al omitir la aplicación de la fórmula presupuestaria e imponer a la Rama Judicial una aportación arbitraria y desproporcionada que requeriría la implantación de medidas extremas que impactarían de manera adversa nuestros proyectos y planes de desarrollo, a nuestro personal y, más importante aún, a los servicios que se prestan a la ciudadanía.* (Énfasis suplido).[57]

De esta manera, la OAT advirtió a la Asamblea Legislativa que de mantenerse el presupuesto según recomendado, la Rama Judicial se vería imposibilitada de cumplir con su responsabilidad constitucional. Más importante aún, reconoció que el establecimiento de la fórmula para asignar el presupuesto de la Rama Judicial respondió a principios constitucionales, cuyo incumplimiento arbitrario podría conllevar una violación a la independencia judicial y a la separación de poderes.[58] Ante esa irrefutable realidad, surge la interrogante de ¿por qué los administradores de la Rama Judicial no iniciaron las acciones legales correspondientes en contra de las ramas políticas a fin de lograr el financiamiento necesario? ¿Por qué aceptaron, sin más, los recortes presupuestarios, aun cuando reconocen que los mismos

---

[57] Íd., pág. 17.

[58] Íd., pág. 18.

afectan negativamente nuestro funcionamiento? No hay duda de que estas son interrogantes que deben ser contestadas por la distinguida Jueza Presidenta señora Fiol Matta.

Ciertamente, tanto el Gobernador en primera instancia, como la Cámara de Representantes y el Senado tienen la facultad constitucional para realizar los recortes presupuestarios necesarios para contrarrestar la crisis fiscal que enfrenta el Gobierno de Puerto Rico. En ese proceso, no hay duda de que nuestra Rama Judicial debe ser solidaria y contribuir a la más pronta recuperación. Ahora bien, esta colaboración, por demás necesaria, no puede conllevar una aportación desmedida e irrazonable que ponga en peligro nuestra capacidad para ejercer las facultades que nos confiere el ordenamiento constitucional. Mucho menos debe acarrear el sacrificio de principios tan fundamentales para nuestro ordenamiento democrático como la independencia judicial y el acceso a la justicia, pilares de nuestra existencia misma como ente de rango constitucional.

Utilizar el poder del control de fondos que ostenta la Asamblea Legislativa para reducir el presupuesto de una de las ramas constitucionales y provocar con ello – ya sea intencionalmente o no – su inutilización e inoperatividad, provoca un desbalance atípico e impropio en nuestro sistema republicano de gobierno que no puede ser aceptado. Esto, pues en la medida que un ente de rango

constitucional se vea imposibilitado de cumplir con sus funciones, la separación de poderes y el sistema de pesos y contrapesos que debe prevalecer entre las tres ramas de gobierno pierde todo su sentido práctico.

Es por ello, que en el justo balance que debe prevalecer entre las tres ramas de nuestro sistema constitucional de gobierno, tanto el Poder Ejecutivo como el Poder Legislativo deben tener muy presente que la Rama Judicial no es una agencia más a la que se le pueda disminuir arbitrariamente su presupuesto sin mayores consecuencias. Por el contrario, el Poder Judicial es uno de las tres columnas en las que descansa nuestro sistema constitucional – en igual jerarquía a los poderes políticos – y con la *ineludible* responsabilidad de salvaguardar los derechos y libertades de nuestros ciudadanos, lo cual en términos prácticos, indudablemente, involucra una *inversión* mínima de parte del Gobierno. *Bajo ninguna circunstancia, el reconocimiento de los derechos constitucionales del Pueblo de Puerto Rico puede estar supeditado a la disponibilidad de fondos*. En ese contexto, lo menos que esperamos de los administradores de la Rama Judicial es la voluntad para defender con firmeza en *todos* los foros disponibles, incluyendo los propios tribunales, esa inversión mínima necesaria.

No obstante, la Jueza Presidenta obvia este curso de acción y nos propone el camino fácil de avalar una *segunda*

*revisión* - en menos de cinco años - en los derechos arancelarios, conforme a la facultad concedida en la Ley Núm. 47-2009.[59] Lo preocupante es que nos solicita que apoyemos esta propuesta *cuan acto de fe*, sin proveernos información o un cuadro completo y detallado sobre los gastos en que incurre la Rama Judicial, de manera que al menos *inicialmente* justifique el que evaluamos la *posibilidad* de recomendar un impuesto adicional a nuestra ciudadanía. A modo de ejemplo, ¿alguien conoce el detalle de qué medidas específicas de las incluidas en la Orden Administrativa OAJP-2014-006 se llegaron a implantar, si alguna, y cuál ha sido su impacto económico?[60] ¿Alguien tiene los datos específicos - más allá de cifras globales sobre los gastos en nómina y otras áreas - de cómo se distribuyen $60 millones de nuestro presupuesto en la OAT?[61] De hecho, la falta de transparencia e información en nuestra Rama Judicial llega al absurdo de que nadie tiene conocimiento del detalle específico de la distribución de gastos de recursos en la oficina de la Jueza Presidenta. ¿Cómo en ese cuadro de desconocimiento pretenden que avalemos un aumento en los derechos arancelarios? Esta es

---

[59] Véase, In re Aprobación Der. Arancelarios R.J., 179 DPR 985 (2010).

[60] Véase, Orden Administrativa OAJP-2014-006, *Medidas de control de gastos año fiscal 2014-2015*.

[61] Véase, *Ponencia de la Directora Administrativa de los Tribunales, Año fiscal 2014-2015*, presentada ante la Comisión de Hacienda y Finanzas Públicas del Senado de Puerto Rico, 5 de junio de 2014, pág. 22, en la que la Directora Administradora de la OAT proyectaba que su oficina gastaría específicamente $60.5 millones.

información *mínima* que la Jueza Presidenta debió proveer para nuestra evaluación.

En segundo lugar, según surge del *Informe técnico sobre los nuevos derechos arancelarios por el trámite de acciones civiles en el Tribunal General de Justici*a, la medida impositiva propuesta por la Jueza Presidenta tendría un impacto aproximado de $2.1 millones.[62] ¿Cómo podemos justificar este aumento cuando el propio informe de la OAT reconoce que el recaudo será mínimo e insignificante en comparación con el desfase que tenemos de $53.9 millones? Reconozco que resulta una tarea complicada hallar una medida que resuelva de una vez el problema fiscal que enfrentamos y, de hecho, esa no es mi pretensión. Simplemente, entiendo que debemos realizar un análisis concienzudo de dónde es más conveniente obtener esa cantidad de fondos, más allá de dónde es más fácil.

Por último, un aumento en los derechos arancelarios implica, en sentido práctico, un incremento en los costos que debe incurrir aquella persona que interese acudir a los tribunales a defender, vindicar y reclamar sus derechos. En términos sencillos esto se traduce en que todo ciudadano que tenga la necesidad de acudir a los tribunales deberá pagar más como condición para *iniciar* el tramitar de su reclamación. Es decir, imponemos una nueva

---

[62] Oficina de Administración de los Tribunales, *Informe técnico sobre los nuevos derechos arancelarios por el trámite de acciones civiles en el Tribunal General de Justicia*, 17 de febrero de 2015, pág. 23.

barrera económica que podría imposibilitar el que los ciudadanos acudan a los tribunales a dirimir sus casos y controversias, lo cual ineludiblemente amenazaría el mantenimiento del orden social y la seguridad pública.

El principio y sus nefastas consecuencias son tan sencillas y directas que francamente se me escapa al entendimiento cómo la mayoría de este Tribunal no lo ve, particularmente aquellos que en el pasado han asumido un *discurso* constante a favor del acceso a la justicia y la importancia de mantener nuestros tribunales económicamente accesibles.[63] Hoy vemos que en momentos en que la historia y Puerto Rico requieren que esas palabras se transformen en acción, estos prefieren avalar medidas que directamente convierten sus pronunciamientos en retórica inconsecuente.

En fin, una reducción tan dramática en el presupuesto de nuestra Rama Judicial conlleva una imposibilidad de cumplir cabalmente con nuestras funciones constitucionales. Ante ese escenario, los administradores de la Rama tenían *y tienen* el deber y la responsabilidad de tomar todas las acciones pertinentes a fin de garantizar nuestra independencia y funcionalidad. Cruzarse de brazos para posteriormente proponer un aumento en los derechos arancelarios y una disminución en los beneficios

---

[63] Véase, L. Fiol Matta, *Access to justice and the courts*, Trinity Washington University. Disponible en: https://noticiasmicrojuris.files .worpress.com/2015/02/access-justice-courts.pdf. (Última visita, 5 de marzo de 2015). Véase, además, L. Fiol Matta, *Knowing the Communities We Serve*, 49 Court Review 14 (2013).

de los miles de empleados que honrosamente laboran para nuestra Rama Judicial, simplemente es inaceptable. Por todo lo anterior, respetuosamente disiento y rechazo enérgicamente el curso decisorio que opta tomar una mayoría de los miembros de este Tribunal.


                                    Edgardo Rivera García
                                         Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

Aprobación de los Derechos Arancelarios pagaderos a los(as) Secretarios(as), los(as) Alguaciles(as) y a otro personal de la Rama Judicial que ejerce funciones de recaudación.

Voto Particular Disidente emitido por el Juez Asociado señor Estrella Martínez, al cual se unen la Jueza Asociada señora Pabón Charneco y los Jueces Asociados señores Kolthoff Caraballo y Rivera García.

San Juan, Puerto Rico, a 9 de marzo de 2015.

En lugar de adoptar todos los mecanismos que conlleva ejercer una seria disciplina fiscal, mediante la implantación de un plan en el que verdaderamente se sacrifiquen todos los sectores poderosos de la Rama Judicial que se nutren de millones de dólares -entiéndase suplidores, contratistas y arrendadores de edificios con cánones sobrevalorados-, una Mayoría de este Tribunal apresurada y lamentablemente impone el plan propuesto por la Hon. Jueza Presidenta señora Liana Fiol Matta. Con este plan la soga va

a estrangular nuevamente a los más débiles: a los ciudadanos y a los empleados de la Rama Judicial.

Hoy se implantan simultáneamente dos fases contra los sectores más débiles. En una, se aumentan sustancialmente los aranceles judiciales y otros costos de litigación, mientras que la otra fase de este plan trastoca innecesariamente los beneficios de los empleados de la Rama Judicial.

La adopción de esta primera fase por una Mayoría de este Tribunal, vulnera el derecho más intrínseco y básico que debe tener todo ciudadano en una sociedad que se concibe como democrática: el acceso a la justicia. Ello, al imponer y aumentar significativamente todos los derechos arancelarios que deben pagarse al recurrir ante nuestros tribunales. De esta manera, se arremete contra todos los ciudadanos que procuran un remedio que, más allá de preservar el orden, imponga justicia. Por ello, DISIENTO.

I

En aras de fortalecer la Rama Judicial y proveerle los mecanismos imprescindibles para la consecución de la justicia, la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (Ley de la Judicatura), diáfanamente reconoce la imperiosa necesidad de promover

y aumentar el acceso a nuestros tribunales. *Véase* Ley Núm. 201-2003, 4 LPRA sec. 24 *et seq.* Particularmente, en la Exposición de Motivos de la referida legislación se consignó el extracto que incluimos a continuación:

> Es responsabilidad de todos propiciar un sistema de justicia en el que se provea acceso inmediato y económico para atender los reclamos de la ciudadanía [y] que sea sensible a la realidad particular de los distintos componentes de nuestra sociedad.

De esta forma, uno de los propósitos más fundamentales de nuestro sistema de justicia es el que nuestra ciudadanía pueda acudir a los tribunales a ejercer sus derechos en aras de ser acreedores de un remedio completo, oportuno y adecuado.

Del mismo modo que la Ley de la Judicatura está enmarcada en el reconocimiento de que a nuestros ciudadanos se les debe proveer un acceso efectivo a los tribunales, la Rama Judicial también está comprometida y obligada por su Plan Estratégico, en el cual el acceso a la justicia es reconocido como un derecho esencial de todo ciudadano. En éste, se exalta que en nuestro ordenamiento jurídico el acceso a la justicia es una "garantía indispensable para el ejercicio de los derechos reconocidos por tratados internacionales, constituciones

y leyes". Plan Estratégico de la Rama Judicial de Puerto Rico 2012-2015,  http://www.ramajudicial.pr/orientacion/ informes/rama/Plan-estrategico-2012-2015.pdf,  pág. 33.

Cabe señalar que con unos fundamentos similares a la política pública que se ha divulgado en nuestro ordenamiento jurídico, la Corte Constitucional de Colombia, por ejemplo, declaró inconstitucional la Ley 1653 del 2013 mediante la cual se autorizaba la imposición de aranceles a todos los procesos judiciales que tuvieran pretensiones dinerarias. Particularmente, el tribunal razonó que este arancel judicial introducía un "sacrificio desproporcionado en principios de justicia, equidad y progresividad tributarias, acarrea violación de los derechos de acceso a la justicia y al debido proceso". *Véase* Sentencia C-169/14 de la Corte Constitucional de Colombia.

En otras jurisdicciones se ha reconocido la ventaja que provoca para sectores económicamente poderosos el encarecimiento de los costos de litigación. A modo de ejemplo, en Argentina se proveen amplias exenciones para evitarlo, tal como disponer que los trabajadores estén exentos de pago de aranceles en reclamaciones laborales. Otras jurisdicciones latinoamericanas, como Bolivia y Ecuador, han enmendado recientemente sus constituciones para incluir el principio de gratitud del sistema judicial y derogar las tasas judiciales.

No obstante, y muy a pesar de nuestra ciudadanía, este Tribunal opta por alejarse del camino emprendido por otras jurisdicciones y encarece nuestro sistema mediante la imposición y aumento de aranceles. Resulta un contrasentido que la Rama Judicial impulse, o el que la Asamblea Legislativa apruebe, la imposición y el aumento irrazonable de todos los aranceles judiciales, mientras que simultáneamente se aprueban impuestos que impactan negativamente el bolsillo de los ciudadanos, aumentan los costos de litigación y de servicios legales. ¿Dónde quedó el propósito primordial de nuestro sistema de justicia? ¿Desde cuándo dejó de ser una prioridad el que nuestros ciudadanos tengan acceso a los tribunales?

Ciertamente, las repercusiones de la reducción del Presupuesto de la Rama Judicial es un asunto que tiene que ser atendido por la administración de los tribunales. Sin embargo, de ninguna manera esto significa que la solución del problema está en el encarecimiento de la justicia. Por el contrario, ahora la Rama Judicial tiene ante sí lo que representa un gran reto para sostener su funcionamiento operacional sin condescender en el acceso a nuestro sistema de justicia.

Luego de analizar el *Informe Técnico sobre los Nuevos Derechos de Aranceles por el Trámite de Acciones Civiles en el Tribunal General de Justicia* (Informe Técnico) presentado por el Comité Técnico en virtud de la Ley Núm. 47-2009, 32 LPRA sec. 1476 nt, se puede

concluir, sin ambages, que los cambios en el cobro de aranceles son nefastos a la política pública de acceso a la justicia de este Tribunal.

A nivel individual este aumento constituye otra piedra en el camino para la búsqueda de servicios y remedios en nuestra Rama. Paradójicamente, a nivel presupuestario el cambio de aranceles sólo repercute en un aumento de $2,575,528. Esa cantidad es una ínfima y representa menos del 4.8% de los $53.9 millones que se redujeron del presupuesto de la Rama Judicial. No obstante, al examinar el Informe Técnico, éste aumento refleja un incremento de 21.4% en aranceles y Alguacilazgo para la población que acude a los foros judiciales en busca de que se les haga justicia. Asimismo, entre otros cambios, se duplica el costo para obtener regrabaciones de $5 a $12 por hora o fracción de ésta, y un incremento significativo en las traducciones por página al aumentar el costo de la primera página a $25 y $5 por página adicional a $6 por página versus el costo actual de tan sólo $3 por página traducida. Igualmente, se aumenta extraordinariamente el costo de las copias de documentos en casos civiles de $0.50 a $6.00 como cargo básico para la primera página más $0.60 por página adicional.

Este tipo de medida en nada propende nuestra política pública y, mucho menos, mitiga efectivamente el impacto de la reducción presupuestaria a la Rama

Judicial. Adviértase que las medidas empleadas no debieron estar dirigidas a limitar, restringir o coartar el acceso al sistema de justicia en Puerto Rico. Lamentablemente, esto es lo que se promueve con la imposición del aumento tributario en los aranceles que hoy se remite a la Asamblea Legislativa para los trámites correspondientes en virtud de la Ley Núm. 47-2009.

Sin detenerse a reflexionar en el impacto que esta carga va a tener sobre nuestra ciudadanía y sin considerar alternativas adicionales, hoy una Mayoría de este Tribunal autoriza la imposición y el aumento de aranceles. Ello, en lugar de agotar las múltiples medidas de ahorro y disciplina fiscal para obligar a que los sectores poderosos que se nutren de los fondos de la Rama Judicial aporten a solucionar la crisis y no tomar acciones drásticas contra los sectores más débiles. Las iniciativas desechadas en el afán de promover a la carrera las dos nefastas fases impulsadas por la Mayoría, superan por mucho la cuantía que se pretende allegar mediante la imposición del aumento que nos ocupa.

Peor aún, adoptan en el vacío una medida de impacto socioeconómico para el próximo año fiscal, sin ni siquiera haber esperado a hacer los reclamos que la Constitución nos exige para velar por el buen funcionamiento de los tribunales ante las vistas presupuestarias. Tampoco agotaron las acciones legales valientes contra las Ramas que provocaron esta crisis.

Por el contrario, hoy se unen sumisamente a ellas para imponerle otra carga al bolsillo del Pueblo.

Este no puede ser el curso de acción a seguir ante el escenario al que se enfrentan nuestros tribunales. Sin embargo, hoy una Mayoría de este Tribunal opta por apoyar una política rígida que obstaculiza el acceso a nuestros tribunales, y por tanto, a la justicia. Además de ese encarecimiento, hoy terminaron de quebrar la confianza del Pueblo en el sistema. Por ello, DISIENTO ENÉRGICAMENTE.

                                    Luis F. Estrella Martínez
                                         Juez Asociado