EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Unión General de Trabajadores<br><br>Peticionaria<br><br>v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>Recurridos<br>_____<br>Unión General de Trabajadores<br><br>Recurrida<br><br>v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>Peticionarios | Certiorari<br><br>2022 TSPR 27<br><br>208 DPR ____ |

Número del Caso:  CC-2020-449
                  cons. con
                  CC-2020-487


Fecha: 15 de marzo de 2022


## CC-2020-449


Tribunal de Apelaciones:

    Panel IX

Abogado de la parte peticionaria:

    Lcdo. Edwin Rivera Cintrón


Abogados de la parte recurrida:

    Lcdo. Carlos Concepción Castro
    Lcdo. Agustín Collazo Mojica

**CC-2020-487**

Tribunal de Apelaciones:

    Panel IX

Abogados de la parte peticionaria:

    Lcdo. Carlos Concepción Castro
    Lcdo. Agustín Collazo Mojica

Abogado de la parte recurrida:

    Lcdo. Edwin Rivera Cintrón

 Materia: Resolución del Tribunal con Votos Particulares Disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Unión General de Trabajadores<br><br>   Peticionaria<br><br>     v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>   Recurridos<br>_____<br><br>Unión General de Trabajadores<br><br>   Recurrida<br><br>     v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>   Peticionarios | CC-2020-0449<br>cons. con<br>CC-2020-0487 | *Certiorari* |

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico a 15 de marzo de 2022.

El presente caso nos brinda la oportunidad de expresarnos en cuanto al procedimiento que deben seguir aquellas partes que interesen impugnar ante los foros judiciales dos (2) o más laudos arbitrales -- emitidos por separado -- que tratan asuntos de similar naturaleza y donde, en esencia, se trata de las mismas partes. En específico, debemos responder si -- en esos escenarios -- nuestro ordenamiento jurídico permite la presentación de un solo recurso para la revisión de los laudos de arbitraje de

los que se trate o si, por el contrario, la normativa vigente exige que se presenten recursos por separado.

Luego de un cuidadoso y detenido análisis de los hechos ante nuestra consideración, así como del derecho aplicable, adelantamos que, cuando una parte interese que el foro primario revise dos (2) o más laudos arbitrales como los aquí en controversia, tiene que presentar un recurso de revisión por cada uno de los laudos así emitidos y, en consecuencia, adherir a cada uno de éstos los aranceles correspondientes, según lo dispuesto en *In re Aprobación de los Derechos Arancelarios*, *infra*. Veamos.

I.

La Unión General de Trabajadores (en adelante, "UGT") es la organización sindical que representa a los empleados del Centro Médico del Turabo, Inc. en los hospitales HIMA San Pablo de Caguas e HIMA San Pablo de Fajardo (en conjunto, "Centro Médico del Turabo, Inc."). En lo referente al Hospital HIMA San Pablo de Caguas, la mencionada unión representa a la unidad de empleados profesionales y a la unidad de empleados no profesionales. Mientras que, en el Hospital HIMA San Pablo de Fajardo, la referida organización sindical representa solo a aquellos empleados catalogados como profesionales. Las relaciones entre los hospitales antes mencionados y los empleados unionados pertenecientes a las referidas unidades se rigen por distintos convenios colectivos.

Así las cosas, los días 10, 25 y 27 de enero de 2017, la UGT presentó ante el Negociado de Conciliación y Arbitraje del Departamento del Trabajo y Recursos Humanos (en adelante, "Negociado de Conciliación y Arbitraje"), tres (3) querellas separadas en contra de las referidas instituciones hospitalarias (entiéndase, el Hospital HIMA San Pablo de Caguas y el Hospital HIMA San Pablo de Fajardo). En ellas, la referida organización sindical reclamó, en beneficio de sus representados, el pago del bono de navidad correspondiente al año 2016, el cual -- al momento de presentar las mencionadas querellas -- aún no se había desembolsado. En específico, la mencionada Unión sostuvo que, conforme al Art. 17 de los distintos convenios colectivos que les cobijaba a las tres (3) unidades antes descritas, correspondía que los referidos hospitales remitieran la cantidad adeudada por concepto del bono de navidad, así como una cantidad igual por penalidad y una suma porcentual adicional en concepto de honorarios de abogado.[1]

---

[1] En particular, el Art. 17 del Convenio Colectivo que cobija a la unidad de profesionales del Hospital HIMA San Pablo de Fajardo -- y el cual comenzó a regir a partir del 25 de mayo de 2016 y finalizó el 24 de mayo de 2019 -- dispone:

Sección 1 – Cuantía del Bono de Navidad

El Hospital concederá a todos los empleados que hayan trabajado setecientas (700) horas o más dentro del periodo de doce (12) meses desde el primero de octubre de cualquier año natural hasta el 30 de septiembre del siguiente año, bajo los términos dispuestos en Ley, un Bono de Navidad equivalente al seis por ciento (6%) de los ingresos totales del empleado, hasta un máximo de diez mil dólares (10,000) o el 3% hasta un máximo de $30,000.00, lo que sea mayor.

Radicadas las mencionadas querellas, el Negociado de Conciliación y Arbitraje les asignó a éstas la siguiente numeración alfanumérica: 1) Unidad de Profesionales de Fajardo A-17-1174; 2) Unidad de No Profesionales de Caguas A-17-1917; y 3) Unidad de Profesionales de Caguas A-17-1970 (entiéndase, la A-17-1917 con la A-17-1970). Posteriormente, dichas querellas le fueron asignadas a la árbitro, señora Yolanda Cotto Rivera (en adelante, "señora Cotto Rivera"), quien -- como parte de la tramitación de las mismas -- consolidó las causas de acción relacionadas al Hospital HIMA San Pablo de Caguas; entiéndase, la A-17-1917 con la A-17-1970. Por tanto, aquella correspondiente a la unidad de no profesionales del Hospital HIMA San Pablo de Fajardo (A-17-1174) fue atendida por separado.

Enterado de las querellas presentadas en su contra, el Centro Médico del Turabo, Inc., se opuso. En cuanto a la querella A-17-1917 consolidada con la A-17-1970, relacionada al Hospital HIMA San Pablo de Caguas, argumentó

---

Sección 2 – <u>Fecha de pago del Bono de Navidad</u>

> Dicho pago se efectuará en o antes del día 15 de diciembre de cada año en el cual este Convenio esté en vigor, disponiéndose que todo empleado que haya cesanteado en su empleo antes de la fecha en que se paga este bono, únicamente tendrá derecho a recibir el por ciento de bono conforme se dispone por ley. Queda entendido que se harán todas las deducciones requerida por ley.

En cuanto a la unidad de profesionales y la unidad de no profesionales del Hospital HIMA San Pablo de Caguas, el Art. 17 del Convenio Colectivo que les aplica -- el cual estuvo vigente desde el 12 de mayo de 2016 hasta el 12 de mayo de 2020 -- contiene, en esencia, un lenguaje similar al antes descrito. No obstante, la referida disposición aumenta el máximo del 3% de los ingresos totales del empleado de $30,000.00 a $40,000.00. Véase, Apéndice de *certiorari* CC-2020-0449, págs. 53-346.

que las mismas no eran arbitrables pues, a su juicio, aplicaba la doctrina de cosa juzgada por impedimento colateral, por lo que procedía el archivo con perjuicio de éstas.[2] De otra parte, y en lo sustantivo, arguyó que no estaba obligado al pago del bono de navidad correspondiente al año 2016 ya que había sido exonerado por el Departamento del Trabajo y Recursos Humanos. Este último planteamiento, a su vez, fue la única defensa que presentó para la querella A-17-1174, referente al Hospital HIMA San Pablo de Fajardo.

Surge del expediente ante nuestra consideración, que la señora Cotto Rivera celebró, de forma conjunta, las vistas correspondientes a las tres (3) querellas. No obstante, los anejos reflejan que las partes sometieron estipulaciones de hechos, proyectos de sumisión y alegatos independientes para cada uno de los dos (2) casos.[3] En otras palabras, tanto la UGT, como el Centro Médico del Turabo, Inc., mantuvieron el trámite de los dos (2) casos de forma separada, conforme fueron consolidados por la árbitro.

---

[2] A grandes rasgos, el Centro Médico del Turabo, Inc. sostuvo que, anteriormente, la UGT había radicado otras dos querellas relativas al bono de navidad (A-10-1995 y A-10-1618) para las cuales la Unión solicitó el cierre con perjuicio. Así, la referida institución hospitalaria arguyó que dichos cierres con perjuicio constituyeron una adjudicación en los méritos respecto a la reclamación del bono de navidad -- convirtiéndose en cosa juzgada -- razón por la cual, a su juicio, la organización sindical de referencia estaba impedida de litigar nuevamente hechos similares. Véase, Apéndice de *certiorari* CC-2020-0487, pág. 28

[3] Véanse, *Apéndice de certiorari* CC-2020-487, págs. 362-433; Sentencia del Tribunal de Primera Instancia, Apéndice de *certiorari* CC-2020-0487, págs. 670-671.

Así pues, evaluados los escritos y los argumentos de las partes, y tras razonar que las querellas ante sí eran arbitrables, el 16 de enero de 2019 la señora Cotto Rivera emitió dos (2) laudos independientes, a saber: un laudo de arbitraje resolviendo la controversia relacionada a la unidad de profesionales y la unidad de no profesionales del HIMA San Pablo de Caguas (*Unión General de Trabajadores v. Hospital HIMA San Pablo Caguas*, A-17-1917 consolidado con A-17-1970) y otro laudo resolviendo la querella sobre la unidad de profesionales del HIMA San Pablo de Fajardo (*Unión General de Trabajadores v. Hospital HIMA San Pablo Fajardo*, A-17-1774). En ambos escenarios, esta última resolvió que el Centro Médico del Turabo, Inc. infringió el Art. 17 de los convenios colectivos objetos del presente litigio por lo que le ordenó el pago del bono de navidad del año 2016 a los empleados unionados. Asimismo, en cada uno de los laudos emitidos, le impuso a la referida institución hospitalaria la penalidad contemplada por la Ley Núm. 148 de 30 de junio de 1969, conocida como Ley del Bono de Navidad, 29 LPRA sec. 502 *et seq.*, así como el veinte por ciento (20%) en honorarios de abogado. Estas determinaciones fueron notificadas en igual fecha, aunque de forma separada.

**Insatisfecho con lo anterior, el 15 de febrero de 2019 el Centro Médico del Turabo, Inc. acudió al Tribunal de Primera Instancia mediante una (1) *Petición de revisión de laudos de arbitraje* en la que solicitó la revisión de ambos**

**laudos que, conforme mencionamos, fueron dictados de forma separada. A esos fines, pagó los aranceles correspondientes a un solo recurso de revisión de laudos de arbitraje; es decir, noventa dólares ($90.00). En síntesis, en su recurso, el Centro Médico del Turabo, Inc. arguyó que la señora Cotto Rivera, la árbitro, erró en su interpretación del Convenio Colectivo que regía la relación obrero-patronal entre las partes del presente litigio, y al concluir que dicha institución no fue exonerada del pago del bono de navidad correspondiente al año 2016.**

En respuesta a la petición presentada por el Centro Médico del Turabo, Inc., la UGT presentó una moción de desestimación. En su escrito, alegó que el Centro Médico del Turabo, Inc. consolidó *motu proprio* -- en un solo recurso -- la impugnación de los dos (2) laudos arbitrales emitidos de forma independiente ante el Negociado de Conciliación y Arbitraje y, además, canceló aranceles correspondientes a una (1) sola causa de acción. En consecuencia, solicitó la desestimación de dicho recurso, fundamentado en el razonamiento esbozado por esta Curia en *M-Care Compounding v. Dpto. de Salud*, *infra*.

Por su parte, el 19 de marzo de 2019 el Centro Médico del Turabo, Inc. radicó su oposición a la mencionada solicitud de desestimación. En ella, argumentó que, en el presente litigio, no existía norma alguna que prohibiese que se radicara una sola petición para revisar más de un laudo de arbitraje. Ello, debido a que, a su entender, lo

resuelto por este Tribunal en *M-Care Compounding v. Dpto. de Salud*, *infra* -- precedente en el cual la UGT basó su solicitud de desestimación -- era distinguible del presente caso pues, en dicha ocasión, se interpretó el Reglamento del Tribunal de Apelaciones, *infra*, el cual no era aplicable al caso de autos.

Asimismo, el Centro Médico del Turabo, Inc. enfatizó en que en los laudos objetos del presente caso existía perfecta identidad de partes, y que éstos fueron emitidos por la misma árbitro luego de recibir idéntica prueba y cuyos resultados eran en extremo similares. En torno a la presunta falta de pago de aranceles, planteó que, incluso de ser correcta dicha alegación, ello constituía un error que no convertía la petición en una nula, sino anulable, debido a que no actuó de forma fraudulenta. Por esta razón, y sin renunciar a las defensas afirmativas antes descritas, en igual fecha -- entiéndase, el 19 de marzo de 2019 -- el Centro Médico del Turabo, Inc. consignó el pago arancelario correspondiente a la revisión del segundo laudo de arbitraje.

Consideradas las posturas de ambas partes, -- y amparado en la normativa pautada por esta Curia en *M-Care Compounding et al. v. Depto. de Salud*, *infra* --, el 17 de abril de 2020 el Tribunal de Primera Instancia notificó una *Sentencia* mediante la cual desestimó la petición de revisión presentada por el Centro Médico del Turabo, Inc. por carecer de jurisdicción para entender en la misma, toda

vez que ésta no se perfeccionó dentro del término de treinta (30) días que se tenía para ello. Al así hacerlo, el foro primario razonó que la decisión de la árbitro de atender los casos de forma separada merecía deferencia y, además, enfatizó que tanto la UGT, como el Centro Médico del Turabo, Inc., realizaron proyectos de sumisión distintos, utilizaron prueba documental diferente y presentaron alegatos por separado para cada caso, por lo que se debió acudir al Tribunal de Primera Instancia mediante recursos separados y pagando los correspondientes aranceles.

De igual forma, dicho foro puntualizó que la deficiencia arancelaria no se debió a que la referida institución hospitalaria fuese indigente, como tampoco ocurrió por las actuaciones, omisiones o instrucciones erróneas de la Secretaría del Tribunal. Según el foro primario, más bien se trató de un error exclusivo del Centro Médico del Turabo, Inc., quien en una (1) sola petición consolidó dos (2) revisiones de laudos dictados por separado -- y cancelando los aranceles correspondientes a una (1) sola petición -- por lo que no aplicaba ninguna de las excepciones reconocidas por nuestro ordenamiento jurídico para el pago de aranceles.[4]

---

[4] De dicho dictamen, el Centro Médico del Turabo, Inc. solicitó reconsideración la cual fue declarada *no ha lugar* mediante *Resolución* de 10 de junio de 2020. En la misma, el foro primario sostuvo lo siguiente:

> [L]as Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia no les brindan a las partes la facultad de

En desacuerdo, el Centro Médico del Turabo, Inc. radicó un recurso de *certiorari* ante el Tribunal de Apelaciones en el que, en esencia, reiteró los argumentos esbozados ante el Tribunal de Primera Instancia. Así, señaló que el foro primario erró al utilizar una normativa inaplicable a procedimientos de revisión administrativas en dicho foro. Oportunamente, la UGT presentó su alegato en oposición.

Evaluados los alegatos de ambas partes, el 26 de agosto de 2020 el foro apelativo intermedio dictó una *Sentencia* a través de la cual revocó el dictamen del Tribunal de Primera Instancia, ello por entender que, al menos, se mantenía viva una (1) de las dos (2) causas de acción impugnando los laudos arbitrales a los cuales hemos hecho referencia. Al así hacerlo, reconoció que el Centro Médico del Turabo, Inc. no podía, a iniciativa propia, consolidar los dos (2) laudos de arbitraje y presentar un solo recurso de revisión ante el foro primario. Por tanto, sostuvo que dicha institución hospitalaria tenía que cancelar aranceles por cada recurso de manera individual.

Ahora bien, el Tribunal de Apelaciones razonó que, debido a que esta última canceló correctamente los

---

consolidar casos automáticamente sin la autorización del Tribunal. Tampoco dejan sin efecto el deber de cancelar aranceles o su efecto sobre los escritos. Por último, si bien los hechos del caso *M-care Compounding Pharmacy et als. v. Departamento de Salud*, giran sobre incidentes procesales en el Tribunal de Apelaciones, su *ratio decidendi* sí es aplicable al caso de autos. (Bastardillas nuestras) (Citas omitidas). Véase, *Apéndice* de *certiorari* CC-2020-0487, pág. 705.

aranceles correspondientes a un solo recurso, el Tribunal de Primera Instancia podía permitir la revisión de uno (1) de los laudos, mas no de ambos. En consecuencia, dispuso que el foro primario debía otorgar al Centro Médico del Turabo, Inc. la oportunidad de expresar cuál laudo pretendía o interesaba que se revisara, por lo que devolvió el caso a dicho foro.

Inconformes, tanto la UGT, como el Centro Médico del Turabo, Inc, comparecen ante este Tribunal mediante recursos de *certiorari* separados. En el recurso CC-2020-0449, la UGT arguye que el foro apelativo intermedio erró en su aplicación de la norma establecida en *M-Care Compounding v. Depto. de Salud*, *infra*, al resolver que el único recurso que presentó el Centro Médico del Turabo -- que solicitaba la revisión conjunta de dos (2) determinaciones distintas -- es jurisdiccionalmente subsanable. En cuanto a ello, argumenta que el Tribunal de Apelaciones dejó al arbitrio de una de las partes en el litigio el perfeccionamiento de un recurso presentado defectuosamente, y cuyo término jurisdiccional había transcurrido. Por tanto, sostiene que la mencionada institución hospitalaria tenía que presentar cada uno de los recursos por separado dentro del término jurisdiccional aplicable, con los derechos arancelarios correspondientes y, entonces, solicitarle al tribunal la consolidación de ambos recursos. Consecuentemente, nos peticiona que revoquemos el referido dictamen.

Por su parte, en la petición de *certiorari* CC-2020-0487, el Centro Médico del Turabo, Inc. aduce que el foro apelativo intermedio erró al sostener la desestimación de uno (1) de los laudos impugnados al foro primario, pues este último -- a su juicio -- utilizó una norma y un reglamento inaplicable a los procedimientos de revisión administrativa ante el Tribunal de Primera Instancia. Arguye, pues, que *M-Care Compounding v. Depto. de Salud*, *infra*, no puede aplicarse a la controversia que nos ocupa, debido a que en dicho caso se trataba de una interpretación del Reglamento del Tribunal de Apelaciones en cuanto a la revisión de decisiones administrativas. Expresó que, casos como el de marras, se rigen por las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia*, *infra*. Así, y por entender que la petición de impugnación que presentó pretende revisar dos (2) laudos cuyo contenido es idéntico, nos solicita que modifiquemos lo resuelto por el tribunal *a quo*.

Trabada así la controversia, expedimos ambos recursos y, tras consolidarlos, con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

Como es sabido, en Puerto Rico existe una vigorosa política pública que favorece el arbitraje obrero-patronal. *AAA v. UIA*, 200 DPR 903, 922 (2018); *H.R. Inc. v. Vissepó & Diez Construction Corp. et al.*, 190 DPR 597,

605 (2014); *C.F.S.E. v. Unión de Médicos*, 170 DPR 443, 448 (2007). Esto, se debe a que este mecanismo es el medio menos técnico y oneroso y, por tanto, el más apropiado para la resolución de las controversias que emanan de la relación laboral. *UGT v. Hima San Pablo Caguas*, 202 DPR 917, 928 (2019); *AAA v. UIA*, *supra*; *Aut. Puertos v. HEO*, 186 DPR 417, 425 (2012); *C.F.S.E. v. Unión de Médicos*, *supra*, pág. 449. Por ello, cuando en el Convenio Colectivo que rige las relaciones obrero-patronal las partes acuerdan utilizar el mecanismo del arbitraje como método alterno, se crea un foro sustituto a los tribunales de justicia, lo que "en efecto, […] representa una sustitución del juez por el árbitro". *Aut. Puertos v. HEO*, *supra*, pág. 424; *Hietel v. PRTC*, 182 DPR 451, 456 (2011); *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, 122 DPR 318 (1988).

De conformidad con ello, "[l]os procedimientos de arbitraje y [los] laudos emitidos en el campo laboral gozan ante los tribunales de justicia de una especial deferencia". *Hietel v. PRTC*, *supra*, pág. 455; *Pagán v. Fund. Hosp. Dr. Pila*, 114 DPR 224, 231 (1983); *S.I.U. de P.R. v. Otis Elevator Co.*, 105 DPR 832, 836 (1977). Consecuentemente, la revisión de éstos se circunscribe a determinar la existencia de fraude, conducta impropia, falta del debido proceso de ley, violación a la política pública, falta de jurisdicción o que el laudo no resuelva todos los asuntos litigiosos. *C.F.S.E. v. Unión de Médicos*, *supra*; *Condado Plaza v. Asoc. Emp. Casinos P.R.*, 149 DPR

347, 353 (1999). Ahora bien, si las partes acuerdan que el laudo sea emitido conforme a derecho, los tribunales de justicia podrán corregir errores jurídicos de forma cónsona con el derecho aplicable. *C.F.S.E. v. Unión de Médicos*, *supra*; *Condado Plaza v. Asoc. Emp. Casinos P.R.*, *supra*; *J.R.T. v. Junta Adm. Muelle Mun. de Ponce*, *supra*, pág. 326.

Sobre la naturaleza del recurso procesal a utilizarse para impugnar los laudos de arbitraje obrero-patronal, precisa señalar aquí que "[e]l recurso para impugnar [éstos] no se rige por el trámite procesal común y corriente de las acciones civiles ordinarias, gobernadas por las Reglas de Procedimiento Civil". (Énfasis suplido). R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, LexisNexis, 2010, pág. 512. Véase, *U.I.L. de Ponce v. Destilería Serrallés, Inc.*, 116 DPR 348 (1985). **En tales supuestos, la revisión de los laudos de arbitrajes es análoga a la revisión judicial de las decisiones administrativas.** *Depto. de Educación v. Díaz Maldonado*, 183 DPR 315, 326 (2011); *Aut. Puertos v. HEO*, *supra*, pág. 445; *Corp. PR Dif. Pub v. UGT*, 156 DPR 631, 640 (2002) (Rivera Pérez, opinión de conformidad).

En otras palabras, el procedimiento a seguirse ante el foro judicial para la impugnación de los laudos arbitrales obrero-patronal "[s]erá similar al utilizado cuando el tribunal, actuando como foro apelativo, revisa la corrección o incorrección de la sentencia emitida por

un tribunal inferior o la decisión de un organismo administrativo de conformidad con las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia*".[5] *Corp. de Crédito y Desarrollo Agrícola v. UGT*, 138 DPR 490, 494 (1995). Véase, además, *Rivera v. Dir. Adm. de los Tribunales*, 144 DPR 808, 821-822 (1998). En consecuencia, el término para presentar los recursos de revisión de laudos de arbitraje emitidos por el Negociado de Conciliación y Arbitraje será el de treinta (30) días improrrogables, contados a partir del archivo en autos de copia de la notificación del laudo. Véase, *U.I.L. de Ponce v. Destilería Serrallés, Inc.*, *supra*. Véase, además, Hernández Colón, *op. cit.*, pág. 512.

### III.

Por otro lado, y por ser en extremo pertinente para la correcta disposición de las controversias ante nuestra consideración, conviene señalar aquí que el derecho de las partes a que un tribunal de superior jerarquía revise las determinaciones emitidas por los tribunales de instancia -- o en este caso, añadimos nosotros, los laudos emitidos en procesos de arbitrajes obrero-patronal -- no es automático, sino que presupone que los recursos se perfeccionen dentro de los términos provistos para ello. *Gran Vista I v. Gutiérrez y otros*, 170 DPR 174, 185 (2007).

---

[5] La Sección 4 de las mencionadas Reglas, dispone que "[e]l recurso de revisión deberá ser presentado y recibido en la Secretaría del Tribunal de Primera Instancia dentro del término jurisdiccional dispuesto por ley". 4 LPRA Ap. VIII-B, Sec. 4.

Por ello, en escenarios como éstos, las normas que rigen el perfeccionamiento de todos los recursos apelativos deben observarse rigurosamente. *Isleta LLC v. Isleta Marina Inc*, 203 DPR 585, 590 (2019); *Soto Pino v. Uno Radio Group*, 189 DPR 84, 90 (2013); *DACo v. Servidores Públicos Unidos*, 187 DPR 704, 707 (2013).

**En ese sentido, entre alguna de las condiciones para perfeccionar cualquier recurso judicial -- incluyendo los de *certiorari*, las apelaciones o los recursos de revisión -- se encuentra el pago de los aranceles de presentación.** *M-Care Compounding v. Dpto. de Salud*, 186 DPR 159, 175 (2012); *Gran Vista I v. Gutiérrez y otros*, *supra*, pág. 188. **El requisito de pagar esos aranceles y de adherir los sellos de rentas internas busca cubrir los gastos asociados a los trámites judiciales.** *M-Care Compounding v. Dpto. de Salud*, *supra*. Véase, *Gran Vista I v. Gutiérrez y otros*, *supra*.

Al respecto, debemos recordar que la Ley Núm. 47-2009, -- la cual enmendó las disposiciones del Código de Enjuiciamiento Civil, 32 LPRA sec. 1477 *et seq*., relativas al pago de aranceles --, en su Art. 3 reconoció la facultad de este Foro para establecer mediante resolución los derechos que las partes han de pagar por sus comparecencias en causas civiles presentadas ante el Tribunal de Primera Instancia, el Tribunal de Apelaciones y el Tribunal Supremo. De conformidad con ello, este Tribunal emitió *In*

*re Aprobación de los Derechos Arancelarios*, 192 DPR 397 (2015).

En torno a la revisión de laudos arbitrales, y según dispuesto en *In re Aprobación de los Derechos Arancelarios*, *supra*, se impone el pago de noventa dólares ($90.00) en sellos de rentas internas -- salvo algunas excepciones -- en aquellas reclamaciones contenciosas, de carácter civil que se vean en las salas superiores del Tribunal de Primera Instancia. Esa sigue siendo la norma hoy en día.

IV.

Establecido lo anterior, y en cuanto a la validez de un documento judicial al cual no se adhieran los mencionados sellos de rentas internas, precisa remitirnos a lo dispuesto en la Ley Núm. 17 de 11 de marzo de 1915, conocida como *Ley Regulando el Arancel de los Derechos que se han de Pagar en Causas Civiles* (en adelante, "Ley Regulando el Arancel"), según enmendada, 32 LPRA sec. 1476. En su sección 5, la precitada ley dispone que "[t]odos y cada uno de los documentos o escritos que requieran el pago de derechos para su presentación ante el tribunal, serán nulos y sin valor y no se admitirán como prueba en juicio a menos que dicho pago esté debidamente evidenciado". 32 LPRA sec. 1481. Véase, Hernández Colón, *op. cit.*, pág. 211. Es decir, la omisión de unir a un escrito judicial los correspondientes sellos de rentas internas lo convierte en nulo e ineficaz por lo que se tiene por no presentado. *Íd.* Véanse, también, *Silva Barreto v. Tejada Martell*, 199 DPR

311, 316 (2017); *M-Care Compounding v. Dpto. de Salud*, *supra*, pág. 176.

**Así pues, "[u]n escrito que deba presentarse dentro de determinado plazo y que por ley deba acompañarse de determinados sellos de rentas internas se tiene por no presentado y no interrumpe dicho plazo si se omite incluir los sellos [arancelarios]".** *Maldonado v. Pichardo*, 104 DPR 778 (1976). Por lo tanto, como requisito de umbral para invocar la jurisdicción de algún foro revisor, la parte que interese revisar alguna determinación de un foro inferior debe pagar los aranceles a los cuales hemos hecho referencia y adherir los sellos a su recurso dentro de los términos provistos por ley.[6] *M-Care Compounding v. Dpto. de Salud*, *supra*; *Gran Vista I v. Gutiérrez y otros*, *supra*. Ahora bien, la anterior norma no es absoluta y admite excepciones.

A esos fines, y como primera excepción, una persona indigente -- que así lo evidencie -- está exenta del pago de aranceles. Sec. 6, Ley Regulando el Arancel, 32 LPRA sec. 1482. En cuanto a esta excepción, es importante aclarar que si una persona solicita litigar *in forma pauperis* -- sin que medie fraude o colusión -- y posteriormente el tribunal rechaza su petición a esos fines, no se le desestimará su recurso aun cuando los

---

[6] No empece lo anterior, y según lo discutido, es menester puntualizar que nada impide que se subsane una deficiencia arancelaria si se hace dentro del término jurisdiccional contemplado por las distintas reglas procesales para el perfeccionamiento de los recursos de los cuales se trate.

aranceles se presenten transcurrido el término para apelar. *M-Care Compounding v. Dpto. de Salud*, *supra*. Véase, *Gran Vista I v. Gutiérrez y otros*, *supra*.

Como segunda excepción, la desestimación no procedería cuando la deficiencia arancelaria ocurre sin intervención de la parte ni intención de defraudar, sino por inadvertencia de un funcionario judicial, quien por equivocación acepta un escrito sin pago alguno o por una cantidad menor de los aranceles que correspondan. *M-Care Compounding v. Dpto. de Salud*, *supra*. Véase, *Salas v. Baquero*, 47 DPR 108 (1934). Tampoco es nulo un escrito judicial si la insuficiencia se debió a las instrucciones erróneas del Secretario de un Tribunal. *M-Care Compounding v. Dpto. de Salud*, *supra*.[7]

Ahora bien, no se reconoce excepción alguna cuando el error en el pago de los aranceles se debe a la parte apelante o a su representante legal. *M-Care Compounding v. Dpto. de Salud*, *supra*, pág. 177. Tal es el caso de autos.

---

[7] Así pues, para evitar la desestimación de los recursos, las partes en un litigio deben cumplir con los términos impuestos por las distintas reglas procesales civiles -- así como con los requisitos para su perfeccionamiento, lo cual incluye el pago de los aranceles correspondientes -- debido a que, un recurso presentado de modo prematuro o de forma tardía, priva de jurisdicción al foro al cual se recurre. Véase *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 501 (2019); *Yumac Home v. Empresas Massó,* 194 DPR 96, 107 (2015).

Como consecuencia, un recurso que incumpla con lo anterior adolecería del grave e insubsanable defecto de falta de jurisdicción, cuya consecuencia es que su presentación no produciría efecto jurídico alguno pues -- al momento de radicarse -- no existía autoridad judicial para acogerlo. *Ruiz Camilo v. Trafon Group, Inc.,* 200 DPR 254, 269 (2018); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). En dicho escenario -- entiéndase, si el tribunal determina que no posee jurisdicción para atender el asunto presentado ante su consideración -- procede la desestimación inmediata del recurso. *Allied Management Inc. v. Oriental Bank*, 204 DPR 374, 386 (2020); *Torres Alvarado v. Madera Atiles*, 202 DPR 495, 501 (2019).

V.

Dicho ello, es menester repasar lo resuelto por esta Curia en *M-Care Compounding v. Depto. de Salud*, *supra*. En esencia, en el precitado caso nos correspondía determinar si dos (2) partes presuntamente afectadas por resoluciones distintas que fueron dictadas por el Departamento de Salud, podían presentar ante el Tribunal de Apelaciones un recurso de revisión de forma conjunta, a los fines de revisar las mencionadas resoluciones administrativas, pero pagando un (1) solo arancel.

Allí, tras un análisis integral del Reglamento del Tribunal de Apelaciones, *supra*, las Reglas de Procedimiento Civil, *supra*, así como la normativa relativa al pago de aranceles, concluimos que no se podían presentar recursos conjuntos para revisar resoluciones administrativas de casos diferentes, sino que las partes debían radicar sus recursos por separado y con la cancelación de los respectivos aranceles. Expresamos que, una vez se perfeccionaran los recursos conforme a las exigencias antes mencionadas, entonces el Tribunal de Apelaciones podía, *motu proprio* o a solicitud de parte, ordenar la consolidación de éstos cuando cumplían con los requisitos a esos fines. Esto último, ya que las partes no poseían autoridad para consolidar casos, sino que ello constituía una facultad exclusiva del tribunal, de conformidad con la Regla 80.1 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 80.1.

Es, pues, a la luz de la normativa antes expuesta, que procedemos a disponer de la controversia que nos ocupa.

VI.

Como mencionamos anteriormente, en el presente caso, la UGT sostiene que el Centro Médico del Turabo, Inc. no perfeccionó sus recursos para la revisión de dos (2) laudos de arbitraje obrero-patronal ya que, a su entender, tenía que presentar un recurso por cada laudo de arbitraje que pretendía revisar, con los derechos arancelarios correspondientes y dentro del término jurisdiccional de treinta (30) días. Consecuentemente, argumenta que procede la desestimación de la petición de revisión de laudos de arbitraje, tal y como concluyó el foro primario.

Mientras que, el Centro Médico del Turabo, Inc. arguye que el caso *M-Care Compounding v. Depto. de Salud*, *supra*, no puede aplicarse a la controversia que nos ocupa, debido a que en dicho caso se interpreta el Reglamento del Tribunal de Apelaciones, *supra*. Razona que dicho Reglamento es inaplicable al caso de marras, ya que este último se rige por las *Reglas para el Procedimiento de Revisión de Decisiones Administrativas ante el Tribunal de Primera Instancia*, *supra*, las cuales -- a su modo de ver -- no prohíben la presentación conjunta de recursos de revisión de laudos arbitrales. No le asiste la razón al Centro Médico del Turabo, Inc.

Y es que, conforme a la normativa previamente esbozada, si el Centro Médico del Turabo, Inc. interesaba impugnar los dos (2) laudos de arbitraje obrero-patronal aquí en controversia tenía que radicar dos (2) recursos de revisión, ambos dentro del término jurisdiccional de treinta (30) días a partir del archivo en autos de copia de la notificación de los referidos laudos. De igual forma, -- y considerando que en el caso de epígrafe no se constituyó ninguna de las excepciones al pago de aranceles antes mencionado --, el Centro Médico del Turabo, Inc. debía incluir en ambos recursos de revisión los derechos arancelarios correspondientes a cada laudo; entiéndase, noventa dólares ($90.00) por cada recurso. No obstante, no lo hizo así, por lo que el Tribunal de Primera Instancia -- como correctamente resolvió -- carecía de jurisdicción para entender en los mismos.

Aun cuando el Centro Médico del Turabo, Inc. remitió el pago de los restantes noventa dólares ($90.00) en concepto de aranceles -- lo cual, valga señalar, ocurrió transcurridos los treinta (30) días jurisdiccionales a los cuales hemos hecho referencia -- éste no logró perfeccionar en tiempo ningún recurso de revisión correspondiente a alguno de los laudos arbitrales. Contrario a lo resuelto por el Tribunal de Apelaciones, dicho error no podía ser rectificado *a posteriori*, y mucho menos a discreción de una de las partes. Se cometieron, pues, los errores señalados.

VII.

Por los fundamentos antes expuestos, revocamos la *Sentencia* dictada por el Tribunal de Apelaciones y reinstalamos, en su totalidad, aquella dictada por el Tribunal de Primera Instancia.

Se dictará *Sentencia* de conformidad.



Ángel Colón Pérez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Unión General de Trabajadores<br><br>    Peticionaria<br><br>       v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>    Recurridos<br>_____<br>Unión General de Trabajadores<br><br>    Recurrida<br><br>       v.<br><br>Centro Médico del Turabo, Inc. h/n/c Hospital HIMA San Pablo Caguas y Hospital HIMA San Pablo Fajardo<br><br>    Peticionarios | CC-2020-0449 cons. con CC-2020-0487 | *Certiorari* |

SENTENCIA

En San Juan, Puerto Rico a 15 de marzo de 2022.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, revocamos la *Sentencia* dictada por el Tribunal de Apelaciones y reinstalamos, en su totalidad, aquella dictada por el Tribunal de Primera Instancia.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García concurren sin opinión escrita. La Jueza Presidenta Oronoz Rodríguez no intervino.

Bettina Zeno González
Secretaria del Tribunal Supremo Interina